SOUTHERN RY. CO. v. KING (two cases).

(Circuit Court of Appeals, Fifth Circuit. March 3, 1908.)

Nos. 1,634, 1,635.

1. ACTION—INJURY TO PERSON AND PROPERTY—CAUSES OF ACTION.
    Where a wife was injured and her husband was killed in the same railroad crossing accident, the fact that the wife did not join her cause of action for the death of her husband with an action for her own injuries did not preclude her subsequent maintenance of an action for her husband's wrongful death, under the rule that, where injuries to the person and the personal property of the injured person grow out of a single tort, the tort to the person and the property constitutes but a single cause of action, the husband not being the "personal property of the wife."

2. SAME—SUITS IN DIFFERENT CAPACITIES.
    The rule against splitting a cause of action has no application where the injury is suffered in a different capacity, or by different persons, as where a wife sustains injuries to her person in the same railroad accident in which her husband was killed, the damages recoverable for her own injuries being her separate property, while those recoverable for the death of her husband under the Georgia law constitute a trust fund for the benefit of the husband's heirs.

3. RAILROADS—ACCIDENTS AT CROSSINGS—NEGLIGENCE—CARE REQUIRED—"WOULD"—"SHOULD"—INSTRUCTIONS.

An instruction that the care required of a person approaching a railroad crossing is such as an ordinarily prudent person "would exercise" was equivalent to such as an ordinarily prudent person "should exercise," the words "would" and "should" in that connection being synonymous, citing Words and Phrases, vol. 8, p. 1527.

4. COMMERCE—SUBJECTS OF REGULATION—RAILROADS—OPERATION OF TRAINS—CROSSINGS- -SPEED.

Civ. Code Ga. 1895, § 2222, requiring locomotive engineers to simultaneously check and keep checking the speed of their trains so as to stop in time should any person or thing be crossing the track on said road at a public road crossing, was not invalid in so far as it applied to trains engaged in interstate commerce, as an invalid regulation thereof by the state, but was within the state's police power to provide regulations for public safety.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Commerce, § 79.]

5. COURTS—FEDERAL COURTS—PRACTICE—EVIDENCE—ADMISSIBILITY—APPLICABILITY TO PLEADINGS.

Under the laws of Georgia, requiring the invalidity of a statute if relied on to be alleged by special plea, and Rev. St. § 914 [U. S. Comp. St. 1901, p. 684], requiring the pleadings in federal courts in actions at law to conform to the practice of the state court, an interstate railroad was not entitled to offer evidence to show that Civ. Code Ga. 1895, § 2222, requiring the checking of trains on approaching public crossings in time to avoid injuring any person or thing on the crossing, was invalid as an unreasonable regulation of interstate commerce, where such objection was not pleaded.

[Ed. Note.—Conformity of practice in federal courts in common-law actions to that of state courts, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

6. APPEAL AND ERROR—SCOPE OF REVIEW—INVALIDITY OF STATUTE.

The invalidity of a statute cannot be considered on a writ of error unless the record shows that the question was distinctly raised in the pleadings in the trial court.

7. RAILROADS—CROSSING ACCIDENT—NEGLIGENCE.

If a person about to go on a railroad crossing sees, hears, or otherwise knows of the approach of the train in time to avoid injury, the railroad's failure to give a statutory warning of the approach of a train would not constitute actionable negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1094.]

8. TRIAL—INSTRUCTIONS—PREJUDICE.

In an action for injury and death at a railroad crossing, an instruction that defendant's failure to give statutory signals of the train's approach to the crossing constituted negligence as a matter of law was rendered harmless to defendant by a further charge that, notwithstanding defendant's negligence in failing to comply with the statute, there could be no recovery if the persons injured and killed by the exercise of ordinary care could have avoided the consequences of defendant's negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 703–718.]

In Error to the Circuit Court of the United States for the Northern District of Georgia.

Jno. J. Strickland, for plaintiff in error.
Reuben R. Arnold and Harvey Hill, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and BURNS, District Judge.

BURNS, District Judge. These suits were brought in the superior court of Habersham county, state of Georgia, against the Southern Railway Company, and were removed by the latter to the United States Circuit Court. Mrs. King sought recovery for the death of her husband, and Inez, a minor, sued by next friend for personal injuries which she had sustained. The grounds of negligence set out in both petitions are practically the same. Mrs. King alleging that, on the day of the accident, "your petitioner, her daughter, Inez, about 14 years old, and her husband, A. O. King, were in a buggy drawn by a mule, traveling on a public road, and while crossing the track of said railway at what is known as the 'Wade Crossing' the vehicle was struck by the locomotive; that in the approach to said crossing the track was obscured by trees, brush, and a high bank; that the approaching train was not discovered until they were upon the track; that the speed of the train was fifty miles an hour; that the death of A. O. King and the injuries received by petitioners were due to the negligent manner in which the train was operated, the high rate of speed, and failure to give any warning." The petitions further aver that "the defendant's agents failed to blow the whistle at the blow post; and failed to simultaneously check and keep checking the speed of said train as it approached said crossing, so as to stop in time, should any person or thing be crossing said track."

The defendant, the railway company, filed its answer denying each and every paragraph of plaintiff's petition, and thereafter, with leave of court, pleaded by amendment that at the time of the accident, for many years prior thereto, and now, the defendant operates and controls a line of railway from the city of Washington, D. C., through the states of Virginia, North and South Carolina, into and through Georgia; that said railway forms a continuous line under the act of Congress, for the purpose of facilitating commerce among the several states, and the postal and military communications of the United States, and to that end for the purpose of carrying passengers, freight, mails, troops, and supplies from one state into another; that said train was a through train made up in the city of Washington, carrying mail, express, and passengers from one state into another, and doing an interstate business, under the authority and control of the Congress of the United States; that the statute of Georgia providing that "there must be fixed on the line of said road, at the distance of 400 yards from the center of each of said crossings and on each side thereof, a post, and the engineer shall be required, whenever he shall arrive at either of said posts to blow the whistle of the locomotive until it arrives at the public crossing, and to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing said track on said road," is inoperative as to defendant's trains, for that it is in violation of section 8, art. 1, of the Constitution of the United States, which gives to Congress the right to "regulate commerce with foreign nations and among the several states"; that said statute is not a reasonable regulation of the police power, but a direct burden upon and impediment to interstate traffic, and impairs the usefulness of defendant for the conduct of such business; that it is impossible to observe said statute and carry the mails

under the contract which defendant has with the government, and the observance of said statute renders it impossible to do an interstate business.

Mrs. King, about the same time, filed suit in Habersham county seeking compensation for the injuries to her person, and, the amount claimed as damages not being within the jurisdiction of the said federal court, trial was had in the superior court of said county, resulting in a verdict for $1,000. On appeal, the judgment was affirmed by the Supreme Court of the state of Georgia. See King v. Ry. Co., 126 Ga. 794, 55 S. E. page 965, 8 L. R. A. (N. S.) 544. Upon motion and agreement of counsel, an order was entered consolidating the two causes of the mother and daughter, resulting in verdicts for the plaintiffs below, from which, and the judgments thereon, assignments of error are presented for review.

The records are identical in both cases with the exception that the railway company filed in the trial court a plea in bar against the petition of Mrs. King upon the ground that plaintiff having recovered in the state court for damages to her person is now estopped from maintaining the present action for the death of her husband. The contention is made that the injuries to the person of the wife, and the loss occasioned by the death of the husband, constitute a single cause of action, and that separate actions will not lie. This contention appears to be seriously made, but in the practice and procedure of the several states it would appear to be a legal novelty without law or precedent. If it be conceded that the deceased husband was the "personal property" of the plaintiff herein, then the contention would be supported by the decisions of every state court but one. Where injuries to the person and the physical property of the injured party grow out of a single tort, then, and in that event, the tort to the person and the property constitutes a single cause of action, and, as previously suggested, the same should be presented in a single suit. This is the English view, and the holding is the same in all of the American courts with one exception. The declaration that the husband is the "personal property" of the wife has not, as yet, received the sanction of court or text-writer. The rule as to a single cause of action has no application where the injury is suffered in a different capacity, or by different persons. In such cases there is, of necessity, two causes of action, and, when embraced in a single suit, a plea of misjoinder would be applicable. Damages recovered by the surviving wife for injuries to her person become her separate property, whereas in many states, and especially in Georgia, the recovery for the death of the husband becomes a trust fund for the benefit of the heirs of the deceased. It follows that the error complained of, by reason of the court overruling said plea, is without merit. Any other disposition would have been error.

The following instruction is assigned as error:

"I further charge you that the care to be exercised by the said A. O. King in approaching the crossing and railroad track is that care which an ordinarily prudent person would exercise for his own safety. What would, or would not, amount to negligence in the manner in which a person entered upon a railroad track would depend, to a large extent, upon the peculiar loca-

tion of the place at which he went upon the track. An ordinarily prudent person in the possession of all his faculties would not attempt to cross a railroad track at any place without using at least his sense of sight, if not that of hearing, to determine whether, at the time and place he was about to cross the same, there were present any of those dangers which a person of ordinary intelligence would reasonably apprehend."

This charge was given at the request of the defendant, with this exception, that the judge substituted the word "should" for "would" where it occurs in the last paragraph of the charge, and plaintiff in error contends that it changed the whole force of the charge. This assignment cannot be sustained. Instructing the jury that the care required is such that an ordinarily prudent person "would exercise" is equivalent to saying "should exercise"; the words "would" and "should" import the same meaning, and the best authorities use them interchangeably. Blythe v. Birmingham Water Works, 11 Exch. 781; Words & Phrases, vol. 8, p. 1527.

The action of the trial court in sustaining a demurrer to so much of defendant's answer, setting up, by amendment, the statute of Georgia governing trains in approaching a public road crossing, known as "the blow post and checking act," is assigned as error, and particularly the ruling as to the second clause thereof, which requires the engineer "to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing said track on said road." This legislative act appears in the statement, and is known as section 2222 of the Civil Code of 1895, and was formerly section 708, Civ. Code 1882. The brief and argument of the plaintiff in error largely rests the disposition to be made here upon this assignment. An examination of the act complained against, and its construction by the courts of Georgia, will relieve it from the suggestion that it was enacted for the purpose of regulating interstate commerce. This statute was passed January 22, 1852 (Acts 1851–52, p. 108), and became effective on the 1st of February thereafter. The original act provided that blow posts should be erected at a distance of 200 yards from each public road crossing, and a sign at the crossing in large letters with the warning: "When You Hear the Whistle Blow, Look Out for the Engine." As amended, the distance of the blow post is 400 yards, and the warning sign has been eliminated. This enactment resulted from an accident to Mrs. Winn, her children and driver, which occurred at a public road crossing on the line of the Macon & Western Railway on December 14, 1851, resulting in the death of two of the children and the driver, and serious injuries to Mrs. Winn and one child, the limbs of the former being broken and the skull of the latter fractured. The catastrophe was of such a serious nature, that the General Assembly, then in session, promptly passed the act above referred to. This accident was the foundation of the cases of Macon & W. R. Co. v. Davis, 18 Ga. 679; Macon & W. R. Co. v. Winn, 19 Ga. 440; Macon & W. R. Co. v. Winn, 26 Ga. 250.

It being conceded, or rather found as a fact by this court, that the legislative intent was to protect travelers and others in the use of the public highways of Georgia, and not to regulate interstate traffic, it is still permissible, and ordinarily a matter of duty, to inquire what effect

the statute has upon trains engaged in interstate commerce, for the reason that the intent may be waived, or dismissed, and still the courts are not relieved from the necessity of ascertaining the practical effect of a particular act, for if it be conceded that the Legislature of a state is inhibited from passing any law which has the effect of regulating that which was directly committed to the nation in the adoption of the Constitution, it follows that duty would not be performed, short of the declaration, that such legislation is beyond the scope and power of the state. The authorities supporting this proposition may be found in Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23, decided as early as 1824, the opinion being by Chief Justice Marshall, and in all subsequent cases where the question was at issue, and particularly the case of Hennington v. Georgia, 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166, where the earlier decisions are reviewed. If the act under discussion is but the reasonable exercise of the police power of the state, though it may effect and tend in a measure to regulate interstate commerce, it would not be obnoxious, nor a subject for inquiry by this court, until such time as the Congress may enact legislation covering this particular question. It appears to have been passed for the sole purpose of protecting those who may use public highways, and presumably has its classification under the police power relating to the public safety. It may be contended, however, that the safety of the public is so remotely involved that the effect of the enactment is unreasonable and places an undue burden upon the carrier. While this act in regard to its effect upon interstate commerce has never been presented to the Supreme Court of Georgia, as appears from an examination of the Reports of that state from volumes 18 to 128, the statute has frequently been construed in regard to local actions and uniformly upheld, though the Supreme Court of that state has seen proper to subject it to criticism.

In affirming the judgment in Central of Georgia Railway Company v. Hall, 109 Ga. 367, 34 S. E. 605, the Supreme Court makes the following observations concerning section 2222 of the Georgia Code:

"We agree with the learned counsel that this law which requires trains to check, and keep checking, when approaching crossings is a hard one, and that it is impossible for the railroads of the country to transact the business of the country and obey it. It was passed about 50 years ago, before the people appreciated the necessity of rapid transit in travel and in freight. If the law was duly obeyed by the locomotive engineers, I am informed that it would take 12 hours or more to run a passenger train from Atlanta to Macon, a distance of about 100 miles; still, it is the law of the land, and the courts must enforce it, however hard it may work upon the business interests of the country, if it should be observed, or upon the railroads when they violate it. Where the servants of the railroad company fail to observe it, and any person or property is injured upon the crossing, the company can make no defense, except that the injury was done by the consent of the person injured, or that he could have avoided the injury by the observance of ordinary care, or that his negligence contributed to it in the way of mitigation of damages."

In Bowen v. Gainesville, etc., Ry. Co., 95 Ga. 688, 22 S. E. 695 (March 25, 1895), the Supreme Court, referring to the requirement to check, says:

"That requirement has frequently been construed to mean must have his train under such control, that he can bring it to a complete stop, if necessary, to prevent a collision upon the **track itself, and**, should it be strictly obeyed,

a collision of any sort would be rendered impossible, and there would be no necessity whatever for any warning of the approach of the train by the blowing of the whistle."

The question of the validity of state statutes and orders of State Railroad Commissions directing the stoppage of through interstate trains have frequently, within late years, been before the Supreme Court of the United States. One of the recent cases is that of Mississippi Railroad Commission v. Illinois Central, 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209, and Atlantic Coast Line Railroad v. North Carolina Commission, 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933. The last declaration by the Supreme Court is found in the opinion rendered December 9, 1907, in Atlantic Coast Line Railroad v. Wharton, 207 U. S. 328, 28 Sup. Ct. 121, 52 L. Ed. 328, in which Mr. Justice Peckham speaking for that tribunal uses the following language:

"That any exercise of state authority in whatever form manifested, which directly regulates interstate commerce, is repugnant to the commerce clause of the Constitution is obvious. It hence arises that any command of a state, whether made directly or through the instrumentality of a railroad commission, which orders, or the necessary effect of which is to order, the stopping of an interstate train at a named station or stations, if it directly regulates interstate commerce, is void."

In Gladson v. Minnesota, 166 U. S. 430, 17 Sup. Ct. 628, 41 L. Ed. 1064, it was said:

"The principles of law which govern this case are familiar, and have been often affirmed by this court. A railroad corporation created by a state is for all purposes of local government a domestic corporation, and its railroad within the state is a matter of domestic concern. Even when its road connects, as most railroads do, with railroads in other states, the state which created the corporation may make all needful regulations of a police character for the government of the company while operating its road in that jurisdiction. It may prescribe the location and the plan of construction of the road, the rate of speed at which the trains shall run, and the places at which they shall stop, and may make any other reasonable regulations for their management, in order to secure the objects of the incorporation, and the safety, good order, convenience, and comfort of the passengers and of the public. All such regulations are strictly within the police power of the state. They are not in themselves regulations of interstate commerce; and it is only when they operate as such in the circumstances of their application, and conflict with the express or presumed will of Congress exerted upon the same subject, that they can be required to give way to the paramount authority of the Constitution of the United States. Stone v. Farmers' Loan & Trust Co., 116 U. S. 307, 333, 334, 6 Sup. Ct. 334, 29 L. Ed. 636; Smith v. Alabama, 124 U. S. 465, 481, 482, 8 Sup. Ct. 564, 31 L. Ed. 508; Hennington v. Georgia, 163 U. S. 299, 308, 317, 16 Sup. Ct. 1086, 41 L. Ed. 166; New York, New Haven & Hartford Railroad v. New York, 165 U. S. 628, 632, 17 Sup. Ct. 418, 41 L. Ed. 853."

The majority of the court are of opinion that Gladson v. Minnesota, supra, and authorities therein cited, sustain the constitutionality of the statute, that the same is a valid exercise of the police power of the state, and therefore the trial court did not err in sustaining the demurrer to the amended answer. The writer entertains the view that the statute is valid in so far as domestic corporations are concerned; but unreasonable and void as to trains engaged in interstate commerce. The business of the country must go on, and in the language of the Supreme Court of Georgia, in Central Railway v. Hall, supra, "it is impossible for the railroads to transact the business of the country and

obey it." Any exercise of state authority in whatever form manifested, which directly regulates, or the necessary effect of which is to regulate, interstate commerce is void. Atlantic, etc., Ry. v. North Carolina, supra.

Plaintiff in error excepted to the ruling of the court in excluding the testimony of Ben Dewberry, in charge of the engine at the time of the collision, in that said witness being called to testify in behalf of the defendant below, in response to a question from counsel, answered, "There are between 90 and 100 crossings on the Southern Railway between the South Carolina line and Atlanta." The question was objected to because incompetent, immaterial, and inadmissible with the observation by counsel, "I think the entire case should be confined to this crossing." Counsel for defendant stated:

"I expect to prove that between the South Carolina line and Atlanta there are practically 100 road crossings, or between 85 and 100 public road crossings; that the distance is 101 miles; that the crossings in some localities are very close together, and within a few hundred yards of each other, and at others further apart; the average making about a crossing to the mile almost. We expect to show further that to observe the statute, and check and keep checking, so as to have the train under control, and to stop, should any person or thing be on the crossing, would consume from 5 to 10 minutes at each crossing, depending upon the weight and length of train and grade. We wish to show that this train was made up and known as No. 39 vestibule train, which runs from the city of Washington through the states of Virginia, North and South Carolina, and Georgia; that it was carrying passengers from one state to another, and also carried an express car with freight. We expect to show that obedience to that crossing act would hinder and practically prevent interstate business being done by the defendant."

The objection was sustained, testimony excluded, and exception noted. We are of the opinion that there was no error in the action of the court in sustaining the objection, as the testimony was not properly admissible in the absence of pleading to support it. This view seems to have obtained with counsel for defendant below, as evidenced by the amendment filed and heretofore discussed. Pleadings of the parties are the allegations made by the parties to a civil, or criminal case, for the purpose of definitely fixing and presenting the issues to be tried and determined between them; and the facts from which the law draws the conclusion of nonliability must be pleaded in the answer, where they are not stated in the petition. Under section 914 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 684], it is provided that the practice, pleadings, forms, and modes of proceeding in civil causes, other than equity and admiralty, in the Circuit and District Courts shall conform, as near as may be, to the practice, pleadings, forms, and modes of proceeding existing in like causes in the courts of record of the state in which such Circuit and District Courts are held. The only object, and the avowed purpose of tendering this testimony, was to show the invalidity of the statute in so far as it related to trains engaged in interstate traffic, and this, without special plea, would not be permissible under the practice and pleadings obtaining in Georgia. See Parham & Co. v. Potts-Thompson Liquor Co., 127 Ga. 303, 56 S. E. 460, and cases there cited. The validity, or invalidity of a statute, cannot be considered upon appeal, unless the record shows that the question was distinctly raised in the pleadings in.

the court below. Savannah, etc., Ry. Co. v. Hardin, 110 Ga. 433, 35 S. E. 681.

A subsequent assignment complains of the refusal to direct a verdict for the defendant. The evidence was sharply in conflict, and the charge requested would have invaded the province of the jury.

The last assignment seeks to review the following paragraph of the general charge to the jury:

"Under the statutes of Georgia, gentlemen, which have been referred to, it is the duty of engineers of trains in Georgia when approaching a crossing, to blow the whistle, as stated to you by counsel, and to check, and keep checking their trains as they approach the crossing, so as to be able to stop them if any person or thing should be upon the crossing. That is the statute of this state, and it is entirely clear that they were not doing that in this case; so there is no question that the railway company, through its servants and agents, was guilty of negligence. I therefore instruct you as a matter of law that the defendant through its servants, agents, and employés was guilty of negligence."

This point is reserved, but the brief contains neither authority nor argument in support of the proposition. The failure to comply with a state statute is held to be negligence per se in Georgia and many other jurisdictions. The engineer testified that he sounded the whistle at the blow post 400 yards from the crossing, but did not continue to blow until the crossing was reached, and made "no effort to comply with the statute in any other particular," and only attempted to check his train when he realized the danger of collision. The object of blowing the whistle is to give timely warning of the approach of the train. It follows that, if a person about to go upon the crossing, sees, hears, or otherwise knows of the approach of the train in time to avoid injury, the object of the statute has been accomplished, and in that event failure to give the statutory warning would not be negligence. This view occurred to the trial court, and the record discloses that upon this point the jury was charged:

"If by the exercise of ordinary care and prudence the deceased could have ascertained by the use of his sense of hearing, and of sight, that the train was approaching, and thereby avoided the accident, his widow cannot recover in this action."

And, further:

"If you believe that King drove on the crossing without having stopped and listened, and if he had listened he would have heard the approach of the train in time to have avoided the injury, then I charge you that his widow cannot recover."

If the charge is error, which we do not concede, it is rendered harmless by the further charge, to wit:

"Notwithstanding the negligence of the defendant (in failing to comply with the statute), if the deceased, by the exercise of ordinary care, could have avoided the consequences of defendant's negligence his widow cannot recover."

The same rule was applied to the daughter, with the exception that the negligence of the father, if any, could not be attributed to her.

Upon the whole case, as made by the pleadings and testimony, the law was clearly presented, the assignments disclose no error, and the judgments should be in all things affirmed.