SOUTHERN RAILWAY COMPANY *v.* JOSEPHINE KING.

SAME *v.* INEZ KING.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

Nos. 140, 141. Argued April 6, 7, 1910.—Decided May 16, 1910.

The right to regulate interstate commerce is exclusively vested in Congress, and the States cannot pass any law directly regulating such commerce; but the States may, in the exercise of the police power, pass laws in the interest of public safety which do not interfere directly with the operations of interstate commerce.

The constitutionality of a state statute regulating operation of railroad trains depends upon its effect on interstate commerce; and, in the absence of congressional regulation on the subject, States may make reasonable regulations as to the manner in which trains shall approach, and give notice of their approach to, dangerous crossings, so long as they are not a direct burden upon interstate commerce.

One who would strike down a statute as unconstitutional must show that it affects him injuriously and actually deprives him of a constitutional right.

Proof must conform to the allegations and without proper allegations testimony cannot be admitted.

A pleading must state facts and not mere conclusions; and the want of

essential definite allegations renders a pleading subject to demurrer. This general rule is also the practice in Georgia.

General statements that a statute is in violation of the commerce clause of the Federal Constitution, is a direct burden on interstate commerce, and impairs the usefulness of the pleader's facilities for that purpose, are mere conclusions and not statements of the facts which make the operation of the statute unconstitutional, and do not raise any defense to a cause of action based on a violation of such statute.

160 Fed. Rep. 332, affirmed.

THE facts, which involve the constitutionality of a statute of Georgia regulating the crossing of highways by railroad trains, are stated in the opinion.

*Mr. John J. Strickland,* with whom *Mr. A. P. Thom* and *Mr. Hamilton McWhorter* were on the brief, for plaintiffs in error:

The amendment alleging that the Blow Post statute is void because a burden upon interstate commerce was in proper form and conformed to the laws of Georgia and properly raised the constitutional question. *S. F & W. Ry.* v. *Hardin,* 110 Georgia, 433; *Brown* v. *State,* 114 Georgia, 60; *Sayor* v. *Brown,* 119 Georgia, 542.

When a constitutional question is not made or passed upon in the lower court, the court of review will not consider it, though afterward argued there. The reverse of the proposition is likewise true. *Butler* v. *Merritt,* 113 Georgia, 241; *Lafitte* v. *Burke,* 113 Georgia, 1000; *State* v. *Henderson,* 120 Georgia, 781; *Newkirk* v. *Sou. Ry. Co.,* 120 Georgia, 1048; *Parham* v. *Potts-Thompson Liquor Co.,* 127 Georgia, 303.

The evidence, offered and rejected by the court, properly raised the constitutional question. All that is required by the laws of Georgia is that the question shall be raised below, and be passed on directly or indirectly and appear in the record either in the pleadings, or the evidence, or other parts of the record. Cases cited *supra. Parham* v. *Potts-Thompson Liquor Co.,* 127 Georgia, 303; *S. F. & W. Ry. Co.* v. *Hardin,*

110 Georgia, 433; *Newman* v. *State*, 101 Georgia, 534; *Lafitte* v. *Burke*, 113 Georgia, 1000. . Under the law of Georgia all objections to evidence not made are waived. *Jackson* v. *State*, 88 Georgia, 784; *Steed* v. *Cruise*, 70 Georgia, 168; *Christian* v. *State*, 86 Georgia, 430; *Rhinehart* v. *Blackshear*, 105 Georgia, 799; *Summers* v. *State*, 116 Georgia, 535.

Commerce among the States consists, among other things, in intercourse and traffic, including in these terms the transportation and transit of persons and property and the instrumentalities thereof. *Mobile County* v. *Kimball*, 102 U. S. 691; *McCall* v. *California*, 136 U. S. 104; *Williams* v. *Fears*, 179 U. S. 270; *Champion* v. *Ames*, 188 U. S. 321.

There is no reserved power in the States to, in any way, regulate interstate commerce. Where the apparent exercise of power has been upheld by the courts, the power was either the mere declaration of a common law duty as applied to the instrumentalities of interstate commerce or the exercise of some other reserved power not pertaining to commerce. Cooke's Commerce Clause of Fed. Const. 111, 124; *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92; 3 Elliott on Railroads, 1156.

If the authority to regulate an interstate railroad train at a public crossing is embraced in the police power of a State, that authority must be so exercised as not to burden or impede the interstate traffic of the company, or impair the usefulness of its facilities for the traffic. The police power of a State is not unlimited and is subject to judicial review, and when exercised in an arbitrary or oppressive manner, such laws may be annulled as violative of the rights protected by the Constitution. *Illinois Cent. R. R.* v. *Illinois*, 163 U. S. 154; *L. S. & M. S. R. R.* v. *State of Ohio*, 173 U. S. 285; see pp. 309 and 335; *Cleveland & Chicago R. R.* v. *St. Louis R. R.*, 177 U. S. 514; *Miss. R. R. Commission* v. *Ill. Cent.*, 203 U. S. 335; *Atlantic Coast Line* v. *N. C. Commission*, 206 U. S. 1; *Morgan Steamship Co.* v. *Louisiana Bd. of Health*, 118 U. S. 455; *Jacobson* v. *Massachusetts*, 197 U. S. 25; *Lawler* v. *Steele*,

152 U. S. 133; *Henderson* v. *New York,* 92 U. S. 259; *Lochner* v. *New York,* 198 U. S. 45; *Holden* v. *Hardy,* 164 U. S. 366; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Gibbons* v. *Ogden,* 9 Wheat. 1, 210; *Sinnot* v. *Davenport,* 22 How. 227; *Mo. Ry. Co.* v. *Harber,* 169 U. S. 613; *Dobbins* v. *Los Angeles,* 195 U. S. 223; *McLean* v. *Arkansas,* 211 U. S. 547.

Congress, alone, can deal with such interstate transportation and its non-action is a declaration that it shall remain free from burdens imposed by state legislation. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196.

Although it is expressly provided that the power of Congress to regulate shall be exclusive, it is obvious that in order to be effective, the exercise thereof must exclude the exercise of any conflicting power under authority of the State; inconsistent state legislation being to that extent superseded. Cooke's Commerce Clause of Fed. Constitution, 109; *Mobile County* v. *Kimball,* 102 U. S. 691; *Leisy* v. *Hardin,* 135 U. S. 100. Police power cannot control in a case like this: *Henderson* v. *Mayor of N. Y.,* 92 U. S. 259; *Jacobson* v. *Massachusetts,* 197 U. S. 25.

Federal control of commerce begins as soon as the subjects or operations of commerce are subjected to burdensome state legislation. Prentice & Eagan, p. 61; *Walling* v. *Michigan,* 110 U. S. 446; *Robinson* v. *Taxing District,* 124 U. S. 489; *Asher* v. *Texas,* 128 U. S. 129; *McCall* v. *California,* 139 U. S. 104; *Brennan* v. *City of Titusville,* 153 U. S. 289.

The statute under review is unconstitutional and void as to interstate railroads. There is no common-law duty on a carrier to check its trains at a crossing, so as to stop if any person or thing should be thereon, and there is no reserved power in a State to impose such burden on an interstate carrier.

The act as applied to through trains is unreasonable. *L. S. & M. S. R. R. Co.* v. *State of Ohio,* 173 U. S. 301.

The act in effect is to regulate an interstate carrier, and· thus interstate commerce. *Brown* v. *Houston,* 114 U. S. 622; *Welling* v. *Missouri,* 91 U. S. 275; *Transportation Co.* v. *Parkersburg,* 107 U. S. 691·.

To regulate is to adjust by rule, method, or established mode; to direct by rule, or restriction; to subject to governing principles or laws. Webster's Int. Dict.

The effect of the statute is to burden, impede, and to impair the usefulness of the facilities of interstate carriers for such traffic. *Ill. Cent. R. R. Co.* v. *Illinois,* 163 U. S. 154; *Miss. R. R. Comm.* v. *Ill. Cent.,* 203 U. S. 346.

The statute is not observed, and the engineers are not prosecuted for its violation, though the statute so requires. Penal Code of Ga., § 517, provides he shall be punished as for a misdemeanor by § 2222 of the Civil Code.

The statute was passed before the days of interstate railroads; it was enacted by the State for the railroads of the State as they were then operated. Interstate carriers operate by virtue of an act of Congress passed since the day of the Georgia statute, and which had the effect to supersede the Blow Post statute of Georgia. Rev. Stat., § 5258.

The evolution of the business world has rendered obsolete the statute under review.

*Mr. Reuben R. Arnold* for defendant in error:

Plaintiff in error has not made its questions in such a way that this court can consider them.

· The court is not bound by a conclusion of a pleader that the statute is a burden on interstate commerce. The rule in pleading here is analogous to the pleading in cases of fraud. A general charge of fraud in a pleading always counts for nothing; the particulars constituting the fraud must be set forth. *Parham & Co.* v. *Potts-Thompson Liquor Co.,* 127 Georgia, 303; *Newkirk* v. *Southern Railway Co.,* 120 Georgia, 1048.

The defendant may, by proper pleadings, raise issues of law, or of fact, legal or equitable, or both. All issues of law shall be raised by demurrer. All issues of .fact shall be raised by plea or answer, which may be of a dilatory nature, or to the merits.

Inasmuch as written pleadings are required, the defendant had no basis for any evidence on this alleged constitutional objection, after its plea had been stricken out.

Incidental or remote effect on interstate commerce does not vitiate legislation. *Sherlock* v. *Alling*, 93 U. S. 99; *Chicago R. R.* v. *Solan*, 169 U. S. 133.

Decisions on state legislation directly seeking to control commerce, are not in point here. Legislation in case at bar is an aid to interstate commerce. Legislation by a State, which directly undertakes to regulate commerce, is void; while other legislation, which incidentally affects it equally as much as a direct regulation of it, has been held valid. The acts and orders construed in *Atlantic &c. R. R.* v. *Wharton*, 207 U. S. 334; *Miss. R. R. Comm.* v. *Ill. Cent. R. R. Co.*, 203 U. S. 335; *Cleveland R. R.* v. *Illinois*, 177 U. S. 514; *Illinois* v. *Illinois &c. R. R. Co.*, 163 U. S. 141, involved unreasonable burdens upon interstate commerce and are easily distinguished.

The case at bar belongs to an entirely different class, such as *Smith* v. *Alabama*, 124 U. S. 465; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Lake Shore R. R.* v. *Ohio*, 173 U. S. 286; *Gladson* v. *Minnesota*, 166 U. S. 427, 430; *Hennington* v. *Georgia*, 163 U. S. 300; and see *Erb* v. *Morasch*, 177 U. S. 584, holding that "a regulation by a city of the speed of railroad trains within the city limits is not, as to interstate trains, an unconstitutional regulation of interstate commerce,—at least until Congress takes action in the matter."

The Blow Post law was passed in 1852, and every railroad company in Georgia takes its franchise and its right to operate subject to the provision of this law, which

has been sustained and applied by the Supreme Court of Georgia in many cases. A full history of this statute will be found in *Southern Railway* v. *Combs*, 124 Georgia, 1004; *Railroad* v. *Davis*, 18 Georgia, 679; *Railroad* v. *Wynn*, 19 Georgia, 440, and *Railroad* v. *Wynn*, 26 Georgia, 250.

It is entirely consistent with the terms of this statute, that trains can run at full speed over crossings in the great majority of instances.

It is within the power of the State to require certain measures of diligence on the part of those operating trains when passing over dangerous places like grade crossings. If this law works a hardship upon the railroads, they can construct underground or overhead crossings.

To maintain grade crossings is dangerous and is so recognized everywhere; some States have abolished grade crossings altogether. See *Railroad* v. *Braddock R. R.*, 152 Pa. St. 116; *Westbrook's Appeal*, 57 Connecticut, 95.

If the State can abolish grade crossings altogether it can impose upon the railroads using such dangerous places almost any conceivable condition before allowing their use. The power to altogether prohibit certainly includes the power to regulate.

MR. JUSTICE DAY delivered the opinion of the court.

These cases were tried together in the Circuit Court and were so considered in the Circuit Court of Appeals, and will be so disposed of here. In No. 140, Josephine King brought her suit in the Superior Court of Habersham County, Georgia, to recover $10,000 against the Southern Railway Company for the wrongful death of her husband, killed while riding in a buggy at a crossing of the defendant's railway. The alleged negligence was the violation of a certain statute of the State of Georgia, in that the company failed to check and to keep checking

the speed of its train while approaching the crossing at which her husband was killed.

In case No. 141, the action was brought by Inez King by her next friend, Josephine King, in the same court, because of injuries received at the same time and place, and in alleged violation of the same statute. Both cases were removed to the United States Circuit Court for the Eastern Division of the Northern District of Georgia. Upon trial verdicts and judgments were rendered against the railroad company. These judgments were affirmed in the Circuit Court of Appeals for the Fifth Circuit. 160 Fed. Rep. 332; 87 C. C. A. 284. The cases were then brought here by writs of certiorari.

The Federal question presented concerns the validity of the statute of the State of Georgia for violation of which a recovery was had, it being the contention of the petitioner that the statute is in violation of the interstate commerce clause of the Federal Constitution, in that it is an illegal burden upon and a regulation of interstate commerce. This statute is found in § 2222 of the Civil Code of Georgia, and reads as follows:

"There must be fixed on the line of said road, and at the distance of 400 yards from the center of each of such road crossings, and on each side thereof, a post, and the engineer shall be required, whenever he shall arrive at either of said posts, to blow the whistle of the locomotive until it arrives at the public road, and to simultaneously check and keep checking the speed thereof so as to stop in time should any person or thing be crossing said track on said road."

It has been frequently decided in this court that the right to regulate interstate commerce is, by virtue of the Federal Constitution, exclusively vested in the Congress of the United States. The States cannot pass any law directly regulating such commerce. Attempts to do so have been declared unconstitutional in many instances,

and the exclusive power in Congress to regulate such commerce uniformly maintained. While this is true, the rights of the States to pass laws not having the effect to regulate or directly interfere with the operations of interstate commerce, passed in the exercise of the police power of the State in the interest of the public health and safety, have been maintained by the decisions of this court. We may instance some of the cases of this nature in which statutes have been held not to be a regulation of interstate commerce, although they may affect the transaction of such commerce among the States. In *Smith* v. *Alabama*, 124 U. S. 465, it was held to be within the police power of the State to require locomotive engineers to be examined and licensed. In *N. Y., N. H. & H. Railroad Co.* v. *New York*, 165 U. S. 628, a law regulating the heating of passenger cars and requiring guard posts on bridges was sustained. In *Lake Shore R. R. Co.* v. *Ohio*, 173 U. S. 286, it was held to be a valid enactment to require railway companies operating within the State of Ohio to cause three of its regular passenger trains to stop each way daily at every village containing over three thousand inhabitants. In *Erb* v. *Morasch*, 177 U. S. 584, it was held that a municipal ordinance of Kansas City, Kansas, although applicable to interstate trains, which restricted the speed of all trains within the city limits to six miles an hour, was a valid exertion of the police power of the State. In the case of *Crutcher* v. *Kentucky*, 141 U. S. 47, this court said:

"It is also within the undoubted province of the State legislature to make regulations with regard to the speed of railroad trains in the neighborhood of cities and towns; with regard to the precautions to be taken in the approach of such trains to bridges, tunnels, deep cuts and sharp curves; and, generally, with regard to all operations in which the lives and health of people may be endangered, even though such regulations affect to some extent the

operations of interstate commerce. Such regulations are eminently local in their character, and, in the absence of Congressional regulations over the same subject, are free from all constitutional objections, and unquestionably valid."

On the other hand, it has been held to be an illegal attempt to regulate interstate commerce to require interstate passenger trains to stop at county seats when adequate train service had already been provided for local traffic. *C. C. C. & St. L. R. R. Co.* v. *Illinois*, 177 U. S. 514. In *Mississippi Railroad Commission* v. *Illinois Central Railroad Company*, 203 U. S. 335, it was held that orders of a state railroad commission which directed the stopping of interstate trains at certain local stations, where adequate transportation facilities had already been provided, was an unlawful attempt to regulate interstate commerce and repugnant to the Federal Constitution.

Applying the general rule to be deduced from these cases to such regulations as are under consideration here, it is evident that the constitutionality of such statutes will depend upon their effect upon interstate commerce. It is consistent with the former decisions of this court and with a proper interpretation of constitutional rights, at least in the absence of Congressional action upon the same subject-matter, for the State to regulate, the manner in which interstate trains shall approach dangerous crossings, the signals which shall be given, and the control of the train which shall be required under such circumstances. Crossings may be so situated in reference to cuts or curves as to render them highly dangerous to those using the public highways. They may be in or near towns or cities, so that to approach them at a high rate of speed would be attended with great danger to life or limb. On the other hand, highway crossings may be so numerous and so near together that to require interstate trains to slacken speed indiscriminately at all such

crossings would be practically destructive of the successful operation of such passenger trains. , Statutes which require the speed of such trains to be checked at all crossings so situated might not only be a regulation, but also a direct burden upon interstate commerce, and therefore beyond the power of the State to enact.

It is the settled law of this court that one who would strike down a state statute as violative of the Federal Constitution must bring himself by proper averments and showing within the class as to whom the act thus attacked is unconstitutional. He must show that the alleged unconstitutional feature of the law injures him, and so operates as to deprive him of rights protected by the Federal Constitution. *Tyler* v. *The Judges*, 179 U. S. 405; *Turpin* v. *Lemon*, 187 U. S. 51, 60; *Hooker* v. *Burr,* 194 U. S. 415; *Hatch* v. *Reardon*, 204 U. S. 152, 160.

In the case at bar the Federal question was sought to be raised by an amendment to the answer. The answer originally filed was general in its nature, and did not set up the defense of violation of the Federal Constitution. The amendment filed set up that the railroad company was engaged in interstate commerce, and at the time of the injury complained of was operating an interstate train, and, after setting up the statute of the State of Georgia for a violation of which the company was sued, averred that it was inoperative as to the defendant's train, because in violation of § 8, Article I, of the Federal Constitution, giving Congress the power to regulate commerce, and further stated:

"Your defendant further shows that the statute of Georgia is not a reasonable regulation under the police power of the State to secure the safety of passengers, but that the statute is a direct burden on and impedes the interstate traffic being done by this defendant, and impairs the usefulness of its facilities for such traffic.

"Defendant further shows that it is impossible to ob-

serve said statute and carry the mails as defendant is required to carry them under the contract it has with the Government; and it is likewise impossible to do an interstate business, and at the same time comply with the terms of said statute.

"Wherefore it says that said statute is inoperative as to it, and it should not be required to comply with the same on its interstate line of railroad.

"All which it stands ready to verify, and prays that it be hence discharged with its reasonable cost."

On oral demurrer to this amendment to the answer the same was held insufficient and it was dismissed. Petitioner's counsel further sought to raise the Federal question by an offer of proof at the trial by an engineer of the company, as follows:

"I expect to prove that between the South Carolina line and Atlanta there are practically one hundred road crossings, or between eighty-five and one hundred public road crossings; that the distance is one hundred and one miles; that the crossings in some localities are very close together, and within a few hundred yards of each other, and at others farther apart, but on the average making a crossing to the mile almost. We expect to show further, that to observe the statute and check and keep checking so as to have a train under control, and to stop should any person or thing be on the crossing, would consume from five to ten minutes for each crossing, dependent, of course, upon the weight and length of the train and the grade; but it would make an average of seven or eight minutes. We wish to show that this train was made up and known as No. 39, the vestibule train which runs from the city of Washington, through the States of Virginia, North Carolina, South Carolina and Georgia; that it was carrying passengers from one State to another, also carrying an express car with freight on it, from one State to another. We wish and expect to show that obedience

to that crossing act would hinder, and practically pre-
vent, interstate business being done by the defendant
railroad. We wish to show the conditions I have just
stated all existed at the time this accident occurred, on
the 11th of October, 1903."

This testimony was excluded and an exception was
taken. It is apparent from this outline of the state of the
record that when this testimony was offered there was no
answer on file in the case under which it would be compe-
tent. A demurrer had been sustained to the amendment
to the answer, and the case stood upon the complaint and
the general issue filed by the defendant. It is elementary
that the proof must conform to the allegations, and that
without proper allegations testimony cannot be admitted.
We are then remitted to the question, Did the court err
in sustaining the demurrer to the amended answer? The
Circuit Court of Appeals held, and we think correctly,
that an inspection of that document shows that it did
not contain a proper averment of the facts, which would
show that the operation of the statute in controversy was
such as to unlawfully regulate interstate commerce, and,
therefore, deprive the railway company of its constitu-
tional right to carry on such commerce unhampered by
such illegal restrictions. The amended answer contains
the general statement that the statute is in violation of
the commerce clause of the Constitution, and a direct
burden upon, and impedes interstate traffic and impairs
the usefulness of defendant's facilities for that purpose;
that it is impossible to observe the statute in carrying
mails and in interstate commerce business. But these
averments are mere conclusions. They set forth no facts
which would make the operation of the statute uncon-
stitutional. They do not show the number or location
of the crossings at which the railway company would be
required to check the speed of its trains so as to interfere
with their successful operation. For aught that appears

as allegations of fact in this answer the crossing at which this injury happened may have been so located and of such dangerous character as to make the slackening of trains at that point necessary to the safety of those using the public highway, and a statute making such requirement only a reasonable police regulation, and not an unlawful attempt to regulate or hinder interstate commerce. In the absence of facts setting up a situation showing the unreasonable character of the statute as applied to the defendant under the circumstances, we think the amended answer set up no legal defense, and that the demurrer thereto was properly sustained.

The learned counsel for the plaintiff in error insists that under the decisions in Georgia, in the absence of a special demurrer requiring a more particular statement, the answer was sufficient. It is enough to say that we have examined those decisions and think that they do not indicate a departure from the general rule that a pleading must state facts and not mere conclusions, and that the want of definite allegations essential to a cause of action or defense renders a pleading subject to demurrer.

We find no error in the judgment of the Circuit Court of Appeals, and the same is affirmed in both cases.

*Affirmed.*

MR. JUSTICE HOLMES, dissenting.

The petitioner set up as a defense to these actions that the statute under which it was sued was such a burden on commerce among the States as to violate § 8, Art. I, of the Constitution of the United States—a pure issue of law. If in order to try this issue intelligently it was necessary to take evidence of facts, I think the court was bound to hear such evidence, even without any specific allegation of the facts that would maintain it, as it is the court's duty to know and to declare the law. But I

leave that question on one side because the petitioners did not stop with the naked proposition, but alleged further that "it is impossible to observe said statute and carry the mails as the defendant is required to carry them under the contract it has with the Government; and it is likewise impossible to do an interstate business, and at the same time comply with the terms of said statute." These are pure allegations of fact. They mean on their face that the requirement that the engineer at every grade crossing should have his train under such control as to be able to stop if necessary to avoid running down a man or wagon crossing the track requires such delays as to prevent or seriously to interfere with commerce among the States. They refer to physical conditions and to physical facts; they can refer to nothing else. I think it obvious that they mean that the crossings are so numerous as to make the requirement impracticable, since I can think of nothing but the number of them that would have that effect.

The statement may be called a conclusion, but it is a conclusion of fact, just as the statement that a certain liquid was beer is a conclusion of fact from certain impressions of taste, smell and sight. If the objection to the pleading had been that more particulars were wanted, although, for my part, I think it would have been unnecessarily detailed and prolix pleading to set forth what and where the crossings were, the pleading should not have been rejected, but the details should have been required. The petitioner showed that it was ready to give them by its offer of proof. But evidently the answer was not held bad on that ground. Presumably at least, as stated by the counsel for the petitioner, it was held bad on the ground taken by the Supreme Court of that State, that although the requirement was impracticable it was the law. *Central of Georgia Ry. Co.* v. *Hall*, 109 Georgia, 367, 369. See 160 Fed. Rep. 332, 337; *S. C.*, 87 C. C. A.

284, 289. For it is to be observed further that the facts involved were public facts, and that although the court might not take notice of the precise situation of particular crossings it well might take notice, as the Supreme Court of Georgia seems to have taken notice in the case just mentioned, that they were numerous. See *United States* v. *Rio Grande Dam & Irrigation Co.*, 174 U. S. 690, 638, and for many cases Wigmore, Ev., §§ 2575, 2580. 16 Cyc. 862. 17 Am. & Eng. Ency. of Law, 2d ed., 904. Again, if any merely technical objection had been thought fatal to the defense, the petitioner undoubtedly would have met it by a further amendment to its plea.

It seems to me a miscarriage of justice to sustain liability under a statute which possibly, and I think probably, is unconstitutional, until the facts have been heard which the petitioner alleged and offered to prove. I think that the judgment should be reversed.

I am authorized to say that Mr. Justice WHITE concurs in this dissent.