**ALEXANDER v. DE WITT et al.**

No. 10514.

Circuit Court of Appeals, Ninth Circuit.

March 10, 1944.

Lorrin Andrews and Avery M. Blount, both of Los Angeles, Cal., for appellant.

Charles H. Carr, U. S. Atty., and John M. Gault, Asst. U. S. Atty., both of Los Angeles, Cal., and John L. Burling, Nanette Dembitz, and Elmer Million, Attys., War Division, Department of Justice, all of Washington, D. C., for appellees.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a judgment which granted a motion to dismiss, and dismissed, as to appellees, an action by appellant, Kenneth Alexander, hereafter called plaintiff, against appellees and other defendants. Appellees are John L. De Witt and R. B. Hood. Their codefendants were L. F. Sloan, L. G. White, Randell Larson, Hugh T. Fullerton and three whom plaintiff, not knowing their true names, called Doe One, Doe Two and Doe Three. Appellees' codefendants were never served with process and never appeared. The ground of the motion to dismiss was that, as to appellees, the complaint failed to state a claim upon which relief could be granted.

The complaint was filed on May 7, 1943. It was in two counts. The second count was stricken out on plaintiff's own motion.

The first count—which hereafter will be called the complaint—stated that plaintiff was a citizen of the United States and a resident of Los Angeles, California; that De Witt was the Commanding General of the Western Defense Command and Fourth Army of the United States; that Hood was a special agent of the Federal Bureau of Investigation of the Department of Justice and was in charge of the Bureau's office at Los Angeles; that Sloan was a supervising officer of the War Relocation Authority and was in charge of its office at Los Angeles; that White was an investigator for the headquarters of the Western Defense Command and was stationed at Los Angeles; that Larson, Fullerton, Doe One, Doe Two and Doe Three were Army officers under De Witt's Command; that Doe One, Doe Two and Doe Three were members of the Board hereafter mentioned; that Hood, Sloan, White, Larson, Fullerton, Doe One, Doe Two and Doe Three were under the orders and control of De Witt; and that on February 27, 1943, Larson, acting under the orders and control of De Witt, issued a notice [1] to plaintiff, a copy of which was attached to the complaint as Exhibit E. The notice read as follows:

"To Kenneth Alexander [plaintiff], 333 South Hope St., Los Angeles, Calif.

"1. A Board of Officers has been appointed by the Commanding General, Western Defense Command and Fourth Army (pursuant to Executive Order 9066 dated February 19, 1942 [7 Federal Register 1407],[2] instructions of the Secretary of War) to consider whether military necessity requires that you be ordered excluded from certain Military Areas of the Western Defense Command, of the Southern Defense Command and of the Eastern Defense Command which areas are defined in Public Proclamations issued by the Commanding Generals of the respective Commands.

"2. The Board of Officers will be convened on Thursday the 11th day of March, 1943, at the hour of 1:30 P.M. at Room 216, Rowan Building, 458 S. Spring St., Los Angeles, California. You may, if you so elect, appear before it at that time and place, and you will be informed of the general nature and scope of the inquiry and afforded an opportunity to present evidence in your own behalf and to answer questions or make a statement under oath or affirmation. Material in the hands of the Board will not be made available for your inspection.

"3. It is requested that you notify the Board in writing at least 24 hours prior to the hearing whether you will appear.

"4. The following are pertinent regulations regarding the conduct of the investigation:

"a. All matters pertaining to the inquiry are confidential and no publicity will be given by the Board.

"b. Your appearance before the Board is optional on your part.

"c. You may be accompanied by counsel to act as your personal adviser; he will not be heard by the Board, nor will he be permitted to examine witnesses. In general, the interrogation of witnesses will be conducted by the Recorder, on behalf of yourself and of the Board.

"d. You may refuse to answer any question asked by the Board without as-

---

[1] The complaint called the notice an order.

[2] Executive Order Feb. 19, 1942, No. 9066 authorized and directed "the Secretary of War, and the Military Commanders whom he may from time to time designate, whenever he [the Secretary] or any designated Commander deems such action necessary or desirable, to prescribe military areas in such places and of such extent as he or the appropriate Military Commander may determine, from which any or all persons may be excluded, and with respect to which, the right of any person to enter, remain in, or leave shall be subject to whatever restrictions the Secretary of War or the appropriate Military Commander may impose in his discretion." It purported to authorize and direct "the Secretary of War and the said Military Commanders to take such other steps as he [the Secretary] or the appropriate Military Commander may deem advisable to enforce compliance with the restrictions applicable to each military area hereinabove authorized to be designated, including the use of Federal troops and other Federal agencies, with authority to accept assistance of state and local agencies." See Toyosaburo Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497; Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774; Minoru Yasui v. United States, 320 U.S. 115, 63 S.Ct. 1392, 87 L.Ed. 1793, 146 A.L.R. 1463; Toyosaburo Korematsu v. United States, 9 Cir., 140 F.2d 289.

signing any specific reason for your refusal.

"e. Any evidentiary statements by you to the Board must be under oath or affirmation.

"f. The inquiry by the Board is in no sense a criminal proceeding; you are not charged with the commission of any penal offense. For your information, Congress has [by the Act of March 21, 1942, c. 191, 56 Stat. 173, 18 U.S.C.A. § 97a] provided penalties for the violation of an order of exclusion. The act in question reads as follows:

" 'Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That whoever shall enter, remain in, leave, or commit any act in any military area or military zone prescribed, under the authority of an Executive order of the President, by the Secretary of War, or by any military commander designated by the Secretary of War, contrary to the restrictions applicable to any such area or zone or contrary to the order of the Secretary of War or any such military commander, shall, if it appears that he knew or should have known of the existence and extent of the restrictions or order and that his act was in violation thereof, be guilty of a misdemeanor and upon conviction shall be liable to a fine of not to exceed $5,000, or to imprisonment for not more than one year, or both, for each offense.'

"[Signed] Randell Larson, Lt. Col. F. A. Recorder."

The complaint stated that plaintiff appeared before the board on March 11, 1943, at the time and place specified in the notice,[3] and answered under oath questions propounded to him by the board; and that on April 21, 1943, he was served with a copy of an individual exclusion order (No. 1K-7) issued by De Witt on April 14, 1943, a copy of which was attached to the complaint as Exhibit F. The order read as follows:

"To Kenneth Alexander [plaintiff], 333 South Hope Street, Los Angeles, California.

"Under authority of Executive Order No. 9066, February 19, 1942, and letter of the Secretary of War, February 20, 1942, and pursuant to a determination that the present action is dictated by military necessity, you are hereby prohibited, after the expiration of ten days from 12:00 o'clock midnight of the day you receive this order, from being in, remaining in, or entering into Military Areas Nos. 1 and 2 (comprising the States of Arizona, California, Oregon and Washington) Western Defense Command, as established by Public Proclamations Nos. 1 and 2, this headquarters, dated March 2, 1942, and March 16, 1942, respectively [7 Federal Register 2320, 2405],[4] and any amendments thereon. This prohibition extends to any zones or areas, which may hereafter be similarly designated, defined and established, but as to such additional zones or areas a period of ten days from and after the date of the proclamation establishing such additional zones or areas is permitted you to comply with this prohibition. This prohibition shall continue in force until revoked in writing by competent authority.

"Under authority of Executive Order No. 9066, February 19, 1942, and letter of the Secretary of War, July 15, 1942, and pursuant to determination that the present action is dictated by military necessity, you are also hereby prohibited from entering into, being in, or remaining in, at any time from and after midnight of the date upon which you receive this order, Eastern Military Area, comprising the States of Maine, New Hampshire, Vermont, North Carolina, South Carolina, Georgia, the District of Columbia and part of the State of Florida, as defined and designated by Proclamation No. 1, dated May 16, 1942, Headquarters, Eastern Defense Command and First Army, Governors Island, New York, H. A. Drum, Lieutenant General, U. S. Army, Commanding

■ Federal Register 3830], and from entering into, being in, or remaining in, from and after said time and date, Military Area No. 1 of Florida, Military Area No. 1 of Alabama, Military Area No. 1 of Mississippi, Military Area No. 1 of Louisiana, Military Area No. 1 of Texas and Military Area No. 1 of New Mexico, as defined and designated by Public Proclamation No. 1, dated May 30, 1942, Headquarters, Southern Defense Command, San Antonio, Texas, Walter Krueger, Lieutenant General, U. S. Army, Commanding [7 Federal Register 6754].

"Within forty-eight hours after service upon you of this order you are required to report in person to a representative of this

---

[3] See footnote 1.

[4] See Kiyoshi Hirabayashi v. United States, supra.

headquarters at such place as may be designated by the person serving this order, to make compliance herewith, and at that time to have your photograph, finger prints and a specimen signature taken.

"Prior to your departure in compliance herewith, you will communicate in writing to Wartime Civil Control Administration, Western Defense Command and Fourth Army, 1251 Market Street, San Francisco, California, the time of your proposed departure, initial and ultimate destinations, route to be followed and mode of travel, upon arrival at ultimate destination, you will, in person, report the fact of your arrival and your address at such destination to the Special Agent in Charge of the nearest office of the Federal Bureau of Investigation, Department of Justice.

"Failure to comply with the foregoing will subject you to the criminal penalties [prescribed in the Act of March 21, 1942, c. 191, 56 Stat. 173, 18 U.S.C.A. § 97a].

"[Signed]   J. L. De Witt,
Lieutenant General,
"U. S. Army Commanding."

The complaint stated that the notice [5] and the order violated the Constitution of the United States and hence were void; that defendants [6] had nevertheless enforced the notice and the order and had threatened to and would, unless restrained, continue to enforce them; that such threatened enforcement would damage plaintiff in a sum in excess of $3,000, exclusive of interest and costs; and that such damage would be irreparable.

The complaint prayed (1) that the notice [7] and the order be adjudged unconstitutional and void, (2) for a temporary restraining order, a preliminary injunction and a permanent injunction restraining defendants from further enforcing the notice and the order, and (3) for such other and further relief as to the court might seem just and proper. A fourth prayer—that defendants be ordered to pay damages to plaintiff—was stricken out on plaintiff's own motion.

In determining whether the complaint stated a claim upon which relief could be granted, we are not required to accept as correct the legal conclusions stated therein,[8] one of which was that the notice and the order were unconstitutional and void; but even if that conclusion were accepted as correct, the judgment would be affirmed for the following reasons:

The gist of the complaint was that defendants had enforced the notice and the order and had threatened to and would, unless restrained, continue to enforce them. A copy of the notice (Exhibit E) and a copy of the order (Exhibit F) were attached to and made part of the complaint. The character and legal effect of these documents must, therefore, be determined from the documents themselves and not from any description or characterization of them in the complaint.[9] Examination of the notice shows that it was not an order,[10] but was only a notice. It commanded nothing, prohibited nothing. It required no enforcement, and, obviously,

5 See footnote 1.

6 Appellees and their codefendants.

7 See footnote 1.

8 Pacific States Box & Basket Co. v. White, 296 U.S. 176, 185, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 57, 58 S.Ct. 466, 82 L.Ed. 646; Federal Life Ins. Co. v. Ettman, 8 Cir., 120 F.2d 837, 839; Lucking v. Delano, 6 Cir., 129 F.2d 281, 282; Id., 6 Cir., 129 F.2d 283, 286. See, also, Pennie v. Reis, 132 U.S. 464, 469, 470, 10 S.Ct. 149, 33 L.Ed. 426; Chicot County v. Sherwood, 148 U.S. 529, 536, 13 S. Ct. 695, 37 L.Ed. 546; Pearcy v. Stranahan, 205 U.S. 257, 263, 27 S.Ct. 545, 51 L.Ed. 793; Equitable Life Assurance Society v. Brown, 213 U.S. 25, 43, 29 S.Ct. 404, 53 L.Ed. 682; Southern R. Co. v. King, 217 U.S. 524, 534–537, 30 S.Ct.

594, 54 L.Ed. 868; Pierce Oil Corp. v. Hope, 248 U.S. 498, 500, 39 S.Ct. 172, 63 L.Ed. 381; St. Louis, K. & S. E. R. Co. v. United States, 267 U.S. 346, 349, 45 S.Ct. 245, 69 L.Ed. 649; Nortz v. United States, 294 U.S. 317, 324, 325, 55 S.Ct. 428, 79 L.Ed. 907, 95 A.L.R. 1346.

9 Dillon v. Barnard, 21 Wall. 430, 437, 438, 22 L.Ed. 673; Interstate Land Co. v. Maxwell Land Grant Co., 139 U.S. 569, 578, 11 S.Ct. 656, 35 L.Ed. 278; Southern Surety Co. v. Commercial Casualty Ins. Co., 3 Cir., 31 F.2d 817, 819; Frigorifico Wilson De La Argentina v. Weirton Steel Co., 4 Cir., 62 F.2d 677, 679; Gannaway v. Standard Accident Ins. Co., 10 Cir., 85 F.2d 144, 145; Simmons v. Peavy-Welsh Lumber Co., 5 Cir., 113 F.2d 812, 813; Cohen v. United States, 8 Cir., 129 F.2d 733, 736.

10 See footnote 1.

was not susceptible of enforcement. We know judicially that such enforcement was an impossibility. Hence, in determining whether the complaint stated a claim upon which relief could be granted, the statement that defendants had enforced the notice and would, unless restrained, continue to enforce it—a statement judicially known to be untrue—must be disregarded.[11]

Examination of the order (Exhibit F) shows that it was made and issued under Executive Order 9066.[12] Enforcement of orders so made and issued was provided for in the Act of March 21, 1942, c. 191, 56 Stat. 173, 18 U.S.C.A. § 97a, supra. Such enforcement is by criminal prosecution of any person violating such an order.[13] The complaint did not state that plaintiff had been prosecuted for violating the order here involved, or that any such prosecution was threatened or intended. It did not state, and could not truthfully have stated, that any of the defendants was an officer empowered to institute or conduct a criminal prosecution. We know judicially that none of the defendants was so empowered, and that therefore none of them could or did prosecute plaintiff.

Of course defendants could have reported plaintiff's violation of the order—if he violated it—and could have requested that he be prosecuted therefor, but the complaint did not state that defendants had made or threatened to make any such report or request, nor would such a statement have added anything to the complaint; for, obviously, such a report or request would not have constituted a prosecution of plaintiff.

Plaintiff contends that criminal prosecution is not the only means whereby an exclusion order made and issued under Executive Order 9066 may be enforced; that the Executive Order itself empowers the appropriate Military Commander—in this case De Witt—to enforce any exclusion order so made and issued by taking such steps as he may deem advisable;[14] and that therefore De Witt, if he had deemed it advisable, could have enforced the exclusion order here involved by seizing plaintiff, forcibly removing him to a place outside the military areas designated in the order, and there detaining him. Whether these contentions are correct or incorrect need not be decided, for the complaint did not state that plaintiff had been seized, removed or detained, or that any such seizure, removal or detention was threatened or intended.

At the hearing below, plaintiff's counsel admitted that, from the issuance of the order to the date of the hearing,[15] there had been no enforcement of the order nor any threat to enforce it, by seizure, removal, detention or otherwise, but argued that the mere issuance of the order warranted the statement in the complaint that defendants had enforced it and threatened to enforce it. We do not think so. The order was not, as argued by plaintiff, a self-enforcing order, nor did it constitute a threat of enforcement by any of the defendants. Instead, it warned plaintiff that violation of the order would subject him to the penalties prescribed in the Act of March 21, 1942—in other words, subject him to criminal prosecution by officers empowered, as defendants were not, to institute and conduct such prosecutions.

No act or acts charged in the complaint constituted an enforcement of the order or a threat to enforce it. The statement that defendant had enforced it and threatened to enforce it was a mere statement of a legal conclusion. No facts warranting the conclusion were stated.

Judgment affirmed.

---

11 Pearcy v. Stranahan, supra; State of Arizona v. California, 283 U.S. 423, 452–455, 51 S.Ct. 522, 75 L.Ed. 1154; Greeson v. Imperial Irrigation Dist., 9 Cir., 59 F.2d 529, 530; Nev-Cal Electric Securities Co. v. Imperial Irrigation Dist., 9 Cir., 85 F.2d 886, 904. See, also, Jones v. United States, 137 U.S. 202, 214–216, 11 S.Ct. 80, 34 L.Ed. 691; Pierce Oil Corp. v. Hope, supra.

12 See footnote 2.

13 See cases cited in footnote 2.

14 See footnote 2.

15 May 25, 1943—18 days after the complaint was filed.