**OCHIKUBO v. BONESTEEL et al.**

**Civil Action No. 3834–PH.**

District Court, S. D. California,
Central Division.

Oct. 2, 1944.

514

A. L. Wirin, of Los Angeles, Cal., for plaintiff.

Charles H. Carr, U. S. Atty., of Los Angeles, Cal., for defendants.

HALL, District Judge.

I have listened with a great deal of interest to Mr. Wirin's argument, and to Mr. Carr's reply. At the inception of the argument Mr. Wirin expressed the thought which was in my mind, that is, concerning the hurdles that plaintiff would have to get over because the equity power of injunction is a great power; it is an unusual one, and is only used in exceptional cases. In other words, the general theory is that the status quo should be perserved.

The plaintiff at this time seeks to have the Court draw a conclusion, as a fact, that the defendants intend and expect to use force upon the person of the plaintiff.

As I indicated before, there is, on the one hand, the Act of Congress No. 503,[1] passed after Executive Order No. 9066[2]

---

[1] 56 Stat. 173, 18 U.S.C.A. § 97a approved March 21, 1942, reads as follows:

"§ 97a. Unlawful entering, remaining, leaving, or committing acts in military areas or zones

"Whoever shall enter, remain in, leave, or commit any act in any military area or military zone prescribed, under the authority of an Executive order of the President, by the Secretary of War, or by any military commander designated by the Secretary of War, contrary to the restrictions applicable to any such area or zone or contrary to the order of the Secretary of War or any such military commander, shall, if it appears that he knew or should have known of the existence and extent of the restrictions or order and that his act was in violation thereof, be guilty of a misdemeanor and upon conviction shall be liable to a fine of not to exceed $5,000 or to imprisonment for not more than one year, or both, for each offense. Mar. 21, 1942, c. 191, 56 Stat. 173."

[2] "Executive Orders
"(No. 9066)
(7 F.R. 1407)
"Authorizing the Secretary of War to Prescribe Military Areas

"Whereas the successful prosecution of the war requires every possible protection against espionage and against sabotage to national-defense material, national-defense premises and national-defense utilities as defined in Section 4, Act of April 20, 1918, 40 Stat. 533, as amended by the Act of November 30, 1940, 54 Stat. 1220, and the Act of August 21, 1941, 55 Stat. 655 (U.S. C., Title 50, Sec. 104);[11]

---

[11] 50 U.S.C.A. § 104.

and before the Japanese were excluded; there is the fact that 110,000 Japanese were evacuated without the use of force; that the whole procedure connected with the matter of the exclusion of an individual is one which involves investigations, hearings, and, as I stated, is the antithesis of force; as well as the presumption that the Army Officers, and those connected with them, will obey Law 503, and the fact that the order of exclusion threatens only the invocation of that law, that is, that if the plaintiff disobeys the order of exclusion, the Army will report him to the United States Attorney, who may or may not present it to the Grand Jury; and that, if presented, the Grand Jury may or may not indict.

As against that there is the argument that General Emmons made a statement[3] and that in two individual exclusion cases force was used; that there was great

---

"Now, therefore, by virtue of the authority vested in me as President of the United States, and Commander in Chief of the Army and Navy, I hereby authorize and direct the Secretary of War, and the Military Commanders whom he may from time to time designate, whenever he or any designated Commander deems such action necessary or desirable, to prescribe military areas in such places and of such extent as he or the appropriate Military Commander may determine, from which any or all persons may be excluded, and with respect to which, the right of any person to enter, remain in, or leave shall be subject to whatever restrictions the Secretary of War or the appropriate Military Commander may impose in his discretion. The Secretary of War is hereby authorized to provide for residents of any such area who are excluded therefrom, such transportation, food, shelter, and other accommodations as may be necessary, in the judgment of the Secretary of War or the said Military Commander, and until other arrangements are made, to accomplish the purpose of this order. The designation of military areas in any region or locality shall supersede designations of prohibited and restricted areas by the Attorney General under the Proclamations of December 7 and 8, 1941,[12] and shall supersede the responsibility and authority of the Attorney General under the said Proclamations in respect of such prohibited and restricted areas.

"I hereby further authorize and direct the Secretary of War and the said Military Commanders to take such other steps as he or the appropriate Military Commander may deem advisable to enforce compliance with the restrictions applicable to each Military area hereinabove authorized to be designated, including the use of Federal troops and other Federal Agencies, with authority to accept assistance of state and local agencies.

"I hereby further authorize and direct all Executive Departments, independent establishments and other Federal Agencies, to assist the Secretary of War or the said Military Commanders in carrying out this Executive Order, including the furnishing of medical aid, hospitalization, food, clothing, transportation, use of land, shelter, and other supplies, equipment, utilities, facilities, and services.

"This order shall not be construed as modifying or limiting in any way the authority heretofore granted under Executive Order No. 8972, dated December 12, 1941, nor shall it be construed as limiting or modifying the duty and responsibility of the Federal Bureau of Investigation, with respect to the investigation of alleged acts of sabotage or the duty and responsibility of the Attorney General and the Department of Justice under the Proclamations of December 7 and 8, 1941,[12] prescribing regulations for the conduct and control of alien enemies, except as such duty and responsibility is superseded by the designation of military areas hereunder.

"Franklin D. Roosevelt
"The White House,
"February 19, 1942."

[3] The complaint alleges:
"On January 24, 1944, Lt. Gen. Delos C. Emmons, through his subordinates, by physical and military force evacuated from the State of California, and from Southern California Masanobu Hata, a person of Japanese ancestry, solely because of said ancestry. Upon said evacuation said Lt. Gen. Delos C. Emmons publicly announced that he was serving notice to any and all of the remainder of the 110,000 persons of Japanese ancestry evacuated from the Pacific Coast that they must not return without his special permission; and that any attempt on the part of any person of Japanese ancestry to enter California would receive similar action by the Western Defense Command."

General Emmons has since been succeeded in the command of this area by General Bonesteel.

---

[12] U.S. Code Cong.Service 1941, pp. 885, 889, 891.

hardship upon the people in the general exclusion, although there isn't any evidence at all of any use of force.

It must be kept in mind, incidentally, that the general exclusion was not begun until after the enactment of Law 503; and plaintiff seeks to have me draw the inference as a fact that by the terms of Executive Order 9066, the use of Federal troops is authorized. While the term, "the use of Federal troops," is used, I don't think it is necessary for me, at this stage of the proceedings, to determine whether or not it does or does not authorize the use of physical force to carry out the orders of the Secretary of War, or the Commanding General of this particular area. But, in connection with the matter, plaintiff's counsel urges that I must draw the inference, as a fact, that force is to be used.

■ The record stands here, of which I take judicial notice, that almost coincidental with the promulgation of Executive Order 9066, General De Witt, the Commanding General of the area at that time, as well as the Secretary of War, and the President, urged the passage and adoption of a law which would provide severe sanctions, and that law was passed. It is Law 503.

■ I think Mr. Wirin is correct when he stated that the first thing to determine here is whether or not there was a threat to use force, and to conclude whether or not those things do amount to a threat—and when I say a threat, I mean a threat as contemplated usually in a Court of Equity —that it must indicate that the danger of the exercise of force is great, imminent, and immediate, and that there is no plain, or speedy, or adequate remedy at law. As to the matter of whether or not there is a plain, or speedy or adequate remedy at law, the Congress so far has concluded that the passage of Law 503 shall be adequate to test the rights of a person, and I am not, at this stage of the proceedings, called upon to determine whether or not 503 is or is not a Constitutional exercise of power. If I were, I would be compelled, I think, under the Hirabyashi[4] case to conclude that it, as well as Executive Order 9066, were both a Constitutional exercise of power by the Federal Government, and in a lawful way.

■ I believe, if we weigh the things I have indicated, one against the other, that no great or immediate or irreparable injury is going to come to the plaintiff by denying the injunction pendente lite. I think it would be stretching reason to the point where it would get into the realm almost of imaginative fear, if I were to say that under the statement of General Emmons, and the practice in two individual exclusion cases, the terms of the Order itself indicated that the Army expected or intended to use force against the plaintiff in this case, Ochikubo.[5]

I wish it to be understood that my decision is limited solely to a consideration of whether or not on the record as now before me, with no answer yet filed by the defendants, there is sufficient support for the exercise of the power to issue a preliminary injunction, and I am of the opinion that there is not sufficient support for the exercise of that power.

As to other questions that might be involved in this case, upon further action taken either by way of some sort of dilatory pleas, or pleas on the merits, I do not wish anything I have said in these few remarks, or anything I have said today, to be indicative of what my conclusions might be at that time, upon what might be called the underlying questions. Particularly, I do not wish to be understood as deciding that I do or do not, as a Court, have the power to review the decisions of the military with relation to their conclusions in this case. If that occasion arises, and arises in a proper proceeding, it will be sufficient time then for me to enter into a consideration of that matter.

Nor do I wish to be understood as determining whether the military may or may not use force to enforce the order. When the conclusion is warranted that they have threatened to use force will be time enough to consider whether or not they have the power to do so.

Petition denied.

---

4 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774.

5 Alexander v. De Witt, 9 Cir., March, 1944, 141 F.2d 573, affirmed an Order of dismissal by this Court of a similar case. The Order of Exclusion in that case was in the same terms as the Order here.