### VON KNORR v. MILES.
No. 2513.

District Court, D. Massachusetts.
May 9, 1945.

964

John C. Johnston, of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and Charles E. Cunningham, Asst. U. S. Atty., both of Boston, Mass., for defendant.

WYZANSKI, District Judge.

This case is before the court upon (1) plaintiff's complaint, as amended April 3, 1945; (2) defendant's answer of June 26, 1944; (3) an agreed statement of facts filed in open court March 20, 1945; (4) defendant's affidavit as to his domicile, filed April 25, 1945, which plaintiff's counsel in open court agreed might be taken as evidence; and (5) defendant's motion for summary judgment filed March 19, 1945. Defendant also made a motion to dismiss but that is no longer before the court since it has been superseded by defendant's motion for summary judgment.

The gist of plaintiff's complaint is that defendant, as military commander, has, without due process of law, deprived plaintiff of his liberty to pursue his employment in connection with contracts between Cities Service Oil Company and the War or Navy Departments. The plaintiff primarily relies upon an alleged deprivation of his constitutional rights, but he secondarily suggests that he is entitled to relief because the defendant has interfered with advantageous contractual relations which the plaintiff enjoyed and for which he is entitled to redress in this court in view of the diversity of citizenship between himself and defendant.

Plaintiff is a naturalized citizen of Massachusetts and of the United States. On August 13, 1943 he was and for six years had been an employee of Cities Service Oil Company at one of its places of business in Massachusetts. It does not appear that he had any written contract of employment. Nor is there any showing as to the nature of his work, the usages of employment in the business, the period of time by which his wages were computed, or the existence of any collective bargain covering his employment. In the absence of such a showing, and in accordance with Paragraph 6 of the agreed statement, I infer as a fact that plaintiff was employed by Cities Service Oil Company at will and not for a fixed period. Campion v. Boston & Maine R. R. Co., 269 Mass. 579, 582, 169 N.E. 499; Fenton v. Federal Street Building Trust, 310 Mass. 609, 612, 39 N.E.2d 414; Littell v. Evening Star Newspaper Co., 73 App.D.C. 409, 120 F.2d 36. See Williston Contracts, Revised Edition, §§ 39, 1027.

Defendant is a major general of the United States Army and is and since February 11, 1942, has been commanding the First Service Command, which extends over the area where plaintiff was employed. Defendant was born in 1882 in the District of Columbia where his father was domiciled and on duty as a high officer in the Regular Army. He lived in various places within the United States until he entered the Military Academy at West Point, New York, where he remained for four years. For the past 39 years he has been an officer in the Regular Army, and has been stationed at various places within and without the United States. Since February 11, 1942, when he assumed his present command, he has resided in a private dwelling house on Mount Vernon Street, Boston. He intends to reside in Boston upon the termination of active military service, and it is his intention to consider Massachusetts as his domicil. From these admitted facts, I infer as an ultimate fact that for the purposes of the statute conferring jurisdiction upon the District Courts in suits where there is diversity of citizenship, Jud.Code § 24(1) (b), 28 U.S.C.A. § 41(1) (b), Major General Miles is clearly a citizen and resident of either the District of Columbia or of Massachusetts. If it were necessary to go further and resolve this ambiguity, I should find that for jurisdictional purposes defendant is a "citizen" of Massachusetts inasmuch as (a) he, though stationed in Massachusetts, has some freedom as to his choice of abode,

including the right to live in a private dwelling, (b) he has expressed a definite intention to live here permanently, (c) being 63 years of age he is unlikely to be stationed elsewhere before his retirement, and (d) no other place has any but an unrealistic and highly technical claim to be his domicil. Mooar v. Harvey, 128 Mass. 219, 220, 221. See American Law Institute, Restatement, Conflict of Laws § 21, comment c. Compare District of Columbia v. Murphy, 314 U.S. 441, 453, lines 17 and 18, 62 S.Ct. 303, 86 L.Ed. 329. But see Kinsel v. Pickens, D.C.W.D.Tex., 25 F. Supp. 455, 456; Harris v. Harris, 205 Iowa 108, 109, 215 N.W. 661, 662; Dicks v. Dicks, 177 Ga. 379, 389, 170 S.E. 245, 250.

December 12, 1941, the President of the United States promulgated Executive Order No. 8972. Therein, after reciting the danger of sabotage, the President directed the Secretaries of War and Navy to establish guards and "to take other appropriate measures, to protect from injury or destruction" national-defense material, premises and utilities. "National-defense material" includes "supplies * * * intended for the use of the United States in connection with the national defense." Act of August 21, 1941, 55 Stat. 655, 50 U.S.C.A. § 104. "National-defense premises" include all "places wherein such national-defense material is being produced." Act of November 30, 1940, 54 Stat. 1220, 50 U.S.C.A. §§ 101, 104–106.

January 10, 1942, "by order of the Secretary of War" the Under Secretary of War issued "administrative instructions" for the discharge of subversives from private plants; and the Under Secretary joined with an Assistant Secretary of the Navy in an accompanying "memorandum." The administrative instructions relate principally to contacts with representatives of organized labor and are not material to this case. The essence of the memorandum is in paragraph 2a which provides that "when adequate investigation reveals that there is good cause to suspect * * * an employee of subversive activity, Army or Navy representatives have authority to *request* the immediate removal of the individual from the project." (Emphasis added.) The memorandum further provides for methods whereby an individual may contest his removal.

February 20, 1943 the Secretary of War by circular No. 57 authorized and directed, all service commands, as well as others, to establish guards and to take other appropriate measures to protect from injury or destruction national-defense material, premises and utilities. In paragraph III 3 of the circular "appropriate measures" is defined to include "the dismissal of subversives from private plants engaged in war production."

Major General Miles, as commander of the First Service Command, through a series of instructions to subordinate officers, authorized and directed Lt.-Col. William J. Bingham to write, and Lt. Samuel W. Whiting to deliver, Exhibit 1, a letter, on the stationery of Headquarters First Service Command, dated and delivered August 13, 1943. The letter was from Lt.-Col. Bingham to Cities Service Oil Company. The opening paragraph of this letter stated "By direction of the Commanding General, First Service Command, you are hereby directed to remove Mr. Hans Von Knoor [sic], 199 Canton Street, Dedham, Mass. from employment on and access to work under War and Navy Department contracts, or anything pertaining to such work." Major General Miles also authorized and directed the writing and delivery of Exhibit 2, a letter written and delivered also on August 13, 1943, but directed to plaintiff personally. Both of these letters were written and delivered upon the basis of an investigation conducted without the presence of plaintiff or his counsel, and plaintiff was not, and has not been, informed of the evidence or given an opportunity to examine the witnesses whose testimony was included in the investigation.

A fair inference from the agreed facts is that Cities Service Oil Company, solely due to these letters, terminated plaintiff's employment August 13, 1942. It is agreed that for jurisdictional purposes plaintiff's damages from loss of this employment, if in contemplation of law he has sustained any damages, exceed, exclusive of interest and costs, $3,000.

In the manner provided by the memorandum of January 10, 1942, and other War Department procedure, plaintiff prosecuted an "appeal" to military authorities higher than Major General Miles. Plaintiff's appeal was unsuccessful and it is agreed that he has exhausted his administrative remedies.

Upon the basis of the foregoing facts plaintiff seeks an injunction restraining defendant from interfering with his employment by Cities Service Oil Company and

declaring invalid "the order to the Cities Service Company" dated August 13, 1943.

Defendant, among other points, challenges the jurisdiction of this court and this challenge must be considered at the outset.

■ It is plain that this court cannot take jurisdiction of this case on the ground that there is diversity of state citizenship between the parties. Plaintiff is a citizen of Massachusetts. If, as I believe, Major General Miles is also a citizen of Massachusetts, then the parties are citizens of the same state. If, on the other hand, Major General Miles has retained citizenship in the District of Columbia, then he is not a citizen of any "state", and the case for that reason is not within the scope of the diversity jurisdiction clause of Jud.Code § 24(1) (b), 28 U.S.C.A. § 41(1) (b). Hepburn v. Elzey, 2 Cranch 445, 2 L.Ed. 332; Hooe v. Jamieson, 166 U.S. 395, 397, 17 S. Ct. 598, 41 L.Ed. 1049.

A more difficult question is whether this court can take jurisdiction under the clause in Jud.Code § 24(1) (a), 28 U.S.C.A. § 41 (1) (a), which confers jurisdiction over suits of a civil nature where the matter in controversy exceeds $3,000 and "arises under the Constitution or laws of the United States."

Both parties agree that for plaintiff to bring his case within the quoted language he must at the least show that he has been deprived of his employment by an act of defendant which purported to be an official order as distinguished from an official recommendation. If the letters of August 13, 1943 were only official recommendations, and the Cities Service Oil Company and its officers were not under any legal duty to comply, and ran no risk of fine, imprisonment or like sanction, then it is agreed that the letters were mere recommendations rather than "orders" and this court would have no jurisdiction to review their validity. England et al. v. Devine, D.C., Mass., 59 F.Supp. 379. Thus the issue is whether there was any penalty for non-compliance with the letters of August 13.

To show that there was a penalty plaintiff points to Act of Congress of March 21, 1942, 56 Stat. 173, 18 U.S.C.A. § 97a, which provides: "whoever shall enter, remain in, leave, or commit any act in any military area or military zone prescribed, under the authority of an Executive order of the President, by the Secretary of War, or by any military commander designated by the Secretary of War, contrary to the restrictions applicable to any such area or zone or contrary to the order of the Secretary of War or any such military commander, shall, if it appears that he knew or should have known of the existence and extent of the restrictions or order and that his act was in violation thereof, be guilty of a misdemeanor and upon conviction shall be liable to a fine of not to exceed $5,000 or to imprisonment for not more than one year, or both, for each offense."

This statute inter alia provides a penalty if a person (1) "shall * * * commit any act", (2) "in any military area * * * prescribed, under the authority of an Executive order of the President * * * by any military commander designated by the Secretary of War", (3) "contrary to the order of the Secretary of War or any such military commander", (4) "if * * * he knew or should have known of the * * * order."

The first element of the statutory crime would have been present if Cities Service Oil Company had defied the letter of August 13. Had the Company continued to employ plaintiff, the Company would have committed an act.

This act, moreover, would have been committed in a military area of the type stipulated in the statute. The President by Executive Order 9066, February 19, 1942, 7 Fed.Reg. 1407, Code of Fed.Reg., Cum. Sup. Title 3, pp. 1092–1093, gave the Secretary of War authority "to prescribe military areas in such places * * * as he or the appropriate Military Commander may determine". April 22, 1942 the Secretary of War designated Lt.-Gen. Hugh A. Drum as Military Commander of the Eastern Defense Command, including Massachusetts, and delegated to him for that region the authority included in Executive Order 9066. Pursuant to that delegation, Lt.-Gen. Drum on May 15, 1942 prescribed a territory, including Massachusetts, as a military area.

If Cities Service Oil Company had flouted the directions in the letter of August 13 the third element of the statutory crime would also have been present. It is true that there was no order of Lt.-Gen. Drum requiring employers to discharge employees thought to be subversive. But there was an order of the Secretary of War. I do not refer to the memorandum of Under Secretary of War Patterson January 10, 1942, which merely gave Army representatives the "authority to *request*"

employers to remove employees. That memorandum was merely an internal administrative instruction as to behavior of Army representatives and did not bind any outsider. But Circular 57 of the War Department issued February 20, 1943, presumably over the signature or by express direction of the Secretary of War, is a different type of document. The Secretary of War purporting to act by virtue of Executive Order No. 8972, dated December 12, 1941, authorizes and directs "defense commands", among others, to establish patrols and "to take other appropriate measures to protect from injury or destruction national-defense material, national-defense premises and national-defense utilities, as defined in Executive Order No. 8972, in any case where action is necessary or desirable for such protection." And the Secretary adds that "'appropriate measures' * * * include * * * the dismissal of subversives from private plants engaged in war production." There is thus established a chain of official directions beginning with the President's direction to the Secretary of War to take appropriate measures to protect plants (Executive Order 8972), including the Secretary's direction to military commands to take action in appropriate cases for the dismissal of subversive employees (War Dept. Circular 57), and terminating with the direction of Maj.-Gen. Miles as military commander addressed to Cities Service Oil Company. When Maj.-Gen. Miles gave his direction to dismiss plaintiff he was acting for the Secretary of War, and his order was in legal effect an order of the Secretary of War.

The fourth element of the statutory crime, knowledge or duty to know of the order, would also have been present if Cities Service Oil Company had defied the letter of August 13.

One other point deserves mention before going further. Counsel for defendant suggest that if Cities Service Oil Company had defied the letter of August 13, 1943 there would have been no violation of the Act of March 21, 1942 because the letter was based upon executive instructions some of which antedated the statute, that is Executive Order No. 8972, dated December 12, 1941, a War Department memorandum dated January 10, 1942, and earlier versions of what became War Department Circular 57 dated February 2, 1943. But the argument is refuted by Hirabayashi v. United States, 320 U.S. 81, 89, 63 S.Ct. 1375, 87 L.Ed. 1774, and Toyosaburo Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, in which defendants were convicted under the Act of Mar. 21, 1942 for having violated military orders based upon an executive order which antedated this same statute.

Inasmuch as defiance by Cities Service Oil Company of the letter of August 13, 1943 would have involved a crime, it follows that that letter was in legal effect an order of the type which is subject to judicial consideration. But there remain these other procedural questions, (1) whether plaintiff has a locus standi to question the order, (2) whether a suit challenging the order is a suit against the United States, (3) whether in a suit challenging the order the Secretary of War is a necessary party, and (4) whether this is an appropriate case for the exercise of equity jurisdiction.

The order of August 13, 1943 was directed at Cities Service Oil Company but the effect of the order was to injure plaintiff by terminating his employment. Under these circumstances plaintiff has a locus standi. Stark v. Wickard, 321 U.S. 288, 303, 64 S.Ct. 559, 88 L.Ed. 733; Columbia Broadcasting System v. United States, 316 U.S. 407, 422, 62 S.Ct. 1194, 86 L.Ed. 1563; Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Independent Service Co. v. Tousant et al., D.C., 56 F.Supp. 75.

This proceeding cannot correctly be described as a suit against the United States in which the Government has not consented to be sued. No property of the United States is involved in these proceedings. If damages are payable they are payable by an individual, a Federal officer alleged to be acting without authority, not by the nation. Mitchell v. Harmony, 13 How. 115, 136, 14 L.Ed. 75. Just as it has been held that a suit against state officials alleged to have interfered with property without authority is not a suit against a state (Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764) so in this case a suit against an officer of the United States for interfering with a contractual right is not a suit against the nation. Philadelphia Co. v. Stimson, 223 U.S. 605, 620, 32 S.Ct. 340, 56 L.Ed. 570.

■ The question whether the Secretary of War is an essential party in this litigation is not free from doubt. See Brooks v. Dewar, 313 U.S. 354, 359, 61 S.Ct. 979, 85 L.Ed. 1399; Jarvis v. Shackleton Inhaler Co., 6 Cir., 136 F.2d 116, 121; National Conference on Legalizing Lotteries, Inc. v. Goldman, 2 Cir., 85 F.2d 66. There are certainly some cases which would indicate that the Secretary of War might be an indispensable party. Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411; Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068. But if those cases be still valid precedents, which is at least doubtful in the light of Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927, they seem to me inapplicable here. It must be acknowledged that the particular order of August 13, 1943 was in legal effect an order of the Secretary of War but it was not issued by him, or after he had considered or learned of the particular facts which led to its promulgation. He had already delegated to Major General Miles the full power at his discretion to issue or not to issue within his command orders of the type of August 13, 1943. There is therefore no danger such as Judge Learned Hand anticipated in the National Conference on Legalizing Lotteries case that if the head of the department were not brought into a suit to enjoin an order enforced by a subordinate official of the department, the subordinate might find himself in a dilemma as to whether to obey the instruction of his chief or the order of a court. Nor in the case at bar is there any need to have the Secretary of War join in any rescission of the outstanding order. Furthermore, even if the Secretary of War were a party to this suit, it is not clear that he would say that he was the final superior official. He might claim that in military matters he was a subordinate of the President as Commander-in-Chief and that no injunction could issue under any circumstance because the President was not joined as a defendant and, under the doctrine of Mississippi v. Johnson, 4 Wall. 475, 18 L.Ed. 437, could not be enjoined. Unless the courts are to admit their incapacity to enjoin any military orders, it would appear that they should not regard as indispensable parties persons higher in the line of authority than the man in whose name the order goes forth. As an additional point it may also be noted that the cases which involve the validity of orders like that of August 13, 1943, customarily present facts which from the governmental as well as the private viewpoint can be more conveniently examined in the district where the order was issued and made operative than in the District of Columbia where the Secretary of War is officially established. For the foregoing reasons and consistently with the opinion of the Supreme Court in Brooks v. Dewar supra, I have concluded that it is not necessary to dismiss this suit because the Secretary of War has not been joined.

■ Also there seems to be no principle of equity which stands in the way of this court taking jurisdiction. It was agreed in open court that plaintiff has exhausted every available administrative remedy. He has no opportunity to challenge the order of August 13, 1943 by defying it and standing the risk of criminal prosecution. His employer has already obeyed and left the employee with no opportunity to claim relief except in a court of equity. It would therefore appear that there is no adequate remedy and indeed no alternative remedy save the one that plaintiff is now following.

The jurisdictional points having been disposed of, the merits of the controversy remain to be considered.

The order, embodied in the letter of August 13, 1943 to Cities Service Oil Company, summarily directs a corporate employer having contracts with the War and Navy Departments to remove one of its employees from access to work on such contracts. It was issued without giving the employee any opportunity to know the evidence or the grounds upon which it was based or to have the assistance of counsel. The order ostensibly finds warrant in the Act of March 21, 1942, 56 Stat. 173, 18 U.S. C.A. § 97a, as has already been stated. It may also conceivably find additional warrant in the power of the President as Commander-in-Chief,—though this is an issue which I find unnecessary to decide or upon which to intimate any judicial opinion. It is perhaps appropriate, however, for me to say that the order is not sustainable, as defendant argues, by § 2 of the Act of December 16, 1940, 54 Stat. 1224, 10 U.S.C.A. § 1193. That statute merely distributes administrative power within the bureaucracy of the War Department, and imposes no duties on outsiders.

These points seem to be involved: (1) is the Act of March 21, 1942, as here applied, invalid as involving a delegation of

legislative power contrary to Article I of the United States Constitution; (2) is the order of August 13, 1943 invalid on the ground that Congress has no constitutional power in time of war to exclude from plants manufacturing government war supplies persons suspected of subversive activities; and (3) is the order of August 13, 1943 invalid on the ground that even if Congress has constitutional power to exclude from plants manufacturing government supplies persons suspected of subversive activities, the power was here exercised without the due process of the law guaranteed by the Fifth Amendment since the exclusion order was not preceded by a hearing where plaintiff was notified of the charge against him, where he had an opportunity to hear the evidence against him and to present his own evidence, and where he was allowed to have the assistance of counsel.

Plaintiff does not lay any stress on the first two points, presumably because of the decisions in Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774, Toyosaburo Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, and Ex parte Endo, 323 U.S. 283, 65 S.Ct. 208, but it is nonetheless appropriate to notice them.

■ The question of delegation of legislative power disappears when the full background of the Act of March 21, 1942 is stated. Prior to the enactment of the Act of March 21, 1942 the President had issued not only Executive Order 8972, dated December 12, 1941, authorizing appropriate measures to protect national defense measures, but also Executive Order 9066, dated February 19, 1942, which specifically refers to Executive Order 8972 and which provides for exclusion of persons from military areas and zones. Both Executive Order 9066 and (under the doctrine of incorporation by reference) Executive Order 8972 were laid before Congress when it was considering the enactment of the Act of March 21, 1942. Congress was aware from these and other sources that measures for excluding subversive employees from plants as well as curfew measures were outstanding. 88 Cong.Rec. 2722, 2725, H.R. Rep. No. 1906, 77th Cong., 2nd Sess., S. Rep. No. 1171, 77th Cong. 2nd Sess. In passing the Act of March 21, 1942 Congress, therefore, ratified measures of that type and gave them the force of compulsory orders to which penalties were attached. There having been Congressional ratification of executive action, there is no room for the doctrine of improper delegation of legislative power. Hirabayashi v. United States, 320 U.S. 81, 91, 102–105, 63 S.Ct. 1375, 87 L.Ed. 1774; Toyosaburo Korematsu v. United States, 323 U.S. 214, 217, 65 S.Ct. 193; Ex parte Endo, 323 U.S. 283, 287, 65 S.Ct. 208.

■ In considering the constitutional authority of Congress in time of war to exclude a person from a plant having a government contract for war supplies it would perhaps be possible under some circumstances to invoke either the power of Congress to "make all needful Rules and Regulations respecting the * * * Property * * * of the United States", U. S. Constitution, Art. IV, § 3, cl. 2, or the powers of Congress "to declare War", "to raise and support Armies" and "to provide and maintain a Navy." Article I, § 8, cls. 11, 12 and 13. However, the former alternative is unavailable in the case at bar since there has been no showing as to what contracts there were between Cities Service Oil Company and the government, as to when the government had acquired or would acquire title to the supplies being furnished, as to the extent to which the government had any property on the premises of the company or as to the employment contracts of the company. I, therefore, leave unresolved the question whether the order of August 13, 1943 can be supported by the power of Congress under Article IV, § 3, cl. 2. Compare United States v. Allegheny County, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209. For similar reasons I do not express any opinion on the question whether the order of August 13, 1943 can be supported on the theory that the plaintiff's employment was the result of a privilege extended by the government which created no legal rights and which was subject to termination at the pleasure of the government. Compare Perkins v. Lukens Steel Co., 310 U.S. 113, 127, 60 S.Ct. 869, 84 L.Ed. 1108. On the facts disclosed it is appropriate and sufficient to view the application of the order of August 13, 1943 and the statute of March 21, 1942 upon which it rests solely in the light of the war powers of Congress under Article I, § 8, cls. 11, 12 and 13.

Cities Service Oil Company was operating what was in essence a private arsenal of our democracy. The supplies it was preparing were designed for the use of the armed forces of the United States. The processes which it was applying may have

involved government secrets, and, at the least, the data on volume and type of production, on transportation and on like matters were confidential. Interference with such production processes, or disclosure of such confidential data, were dangers against which Congress was empowered to provide. And an obvious and logical provision was an order excluding from areas where there were such processes and data any person or persons in whom the government lacked confidence.

Such an exclusion order is as plainly within the war power as the more drastic orders excluding persons from the public streets at nighttime, sustained in Hirabayashi's case, from an entire city, sustained in Korematsu's case, or from the Pacific Coast states, sustained in Endo's case, 323 U.S. p. 302, lines 16–20, 65 S.Ct. 208. All those orders interfered with employment, and on a much wider scale than here where plaintiff remains free to work for his former employer in jobs having no connection with war contracts and free to work for other employers in Massachusetts or elsewhere. It is true that the orders in those three Supreme Court cases were orders directed to an entire group on the basis of a military commander's doubts as to their loyalty, whereas here the order is directed to a particular person. But if that be a distinction, it would seem that the order here was more not less justifiable because it rested on views as to an individual's loyalty rather than a group's loyalty.

Moreover, quite apart from the precedents supplied by the cases of Hirabayashi, Korematsu, and Endo, it is clear on broad grounds of constitutional principle that an order excluding any person from a defense plant in war time is valid.

 Two interests are in competition and must be considered: the government's concern to prevent both sabotage and disclosure to the enemy of secret processes, statistics and information; and the private individual's concern to go where he pleases and engage in such work as is offered him.

It is not mere rhetoric to say that the government's interest in avoiding sabotage and espionage in war time is one of its most vital concerns. National survival is quite literally at stake. Every school boy knows that the experience of this nation during the last war and of Continental countries during this war shows how easily a country's military efforts may be hampered by the admission to war plants of persons who on their face appeared unobjectionable. Saboteurs do not parade with foreign credentials of professional competence. And arsenals are not guarded if watchmen exclude only those in whose satchels they have already found bombs. To avoid grave risks a prudent government may rationally favor a policy denying access to war plants not only by a person proved dangerous but also by any person in whom the government lacks absolute confidence.

The interest of Von Knorr or any other individual in continuing at his job is the sort of interest which the law recognizes and protects at least against certain types of private interference, Compare American Law Institute, Restatement of Torts, § 766. Yet it is an interest which is commonly recognized as being subject to greater practical hazards than most so-called "property rights." In the case at bar it was an interest in a mere relationship of employment which Von Knorr no doubt hoped would be continued, but which was not embodied in any firm agreement giving Von Knorr enduring contractual rights. Moreover, it was an interest in a relationship of employment on work flowing as an indirect result of a government contract with Von Knorr's employer and which might terminate whenever the government terminated its contract. It was, finally, an interest which was not of grave economic importance, even from a personal viewpoint, for in theory and (in the light of the war time demand for labor), in fact Von Knorr still had the opportunity for many types of gainful and dignified employment. Thus the interest was practically circumscribed and economically of relatively little value.

In balancing these obviously unequal competing interests Congress and the Executive were entitled to prefer the interest of the government to that of the individual, and to regard that preference as so plain an exercise of the war power as not to place the government under any obligation to make "just compensation" to the individual whose interest was adversely affected. Compare United States Constitution, Amendment V.

The reasons just given for sustaining the power of Congress to exclude persons from defense plants in war time cut the ground

from under plaintiff's principal contention that the order of August 13, 1943 is invalid under the Fifth Amendment to the Constitution because the order was issued without notice to plaintiff, without a hearing, without an opportunity to hear and present evidence, and without the assistance of counsel. Notice, hearing, counsel and the like are admittedly usually appropriate criteria of due process of law. But these guarantees have significance only if in the end the government's right to act turns on an official finding that certain facts exist. Compare Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129. Where in rare cases such as orders excluding persons from defense plants in war time, the government's right to act is absolute and not dependent upon the facts concerning, or the merits of, any particular case, the formalities of a notice, hearing and counsel are not requisite. Compare United States v. Ju Toy, 198 U.S. 253, 263, 25 S.Ct. 644, 49 L.Ed. 1040. No matter what evidence might be offered by counsel for the government or counsel for the individual, the government would remain legally free to disregard the testimony and rely upon its uncorroborated suspicions. Since in this highly exceptional case, because of its vital interest in war materials and war secrets during war time the government's exclusionary powers are complete, it can refuse admittance to defense plants without giving an explanation, without listening to a protest and without the semblance of a trial.

It is hardly necessary to add that these conclusions of law do not imply that this court believes that it is desirable, as distinguished from legal, for a government, no matter how absolute its power may be, to deny a chance for employment to any citizen merely on the basis of suspicion. Military commanders, like other authorities, will no doubt find it possible as well as just in most cases to give an employee notice of the facts which create their suspicion about him and a chance to present his side of the case. Even where power is free of judicial restraint, those who wield it may impose upon themselves self-restraint. And they may accept as canons for their conduct the standards of procedure which in the overwhelming majority of cases are regarded as fundamental to fair play.

Complaint dismissed, with costs.