**BARN BALLROOM CO., Inc., v. AINSWORTH et al.**

**Civ. A. No. 115.**

District Court, E. D. Virginia, Newport News Division.

May 8, 1946.

300

Ben Jacobs and A. L. Bivins, both of Newport News, Va., for plaintiff.

Harry H. Holt, Jr., U. S. Atty., of Hampton, Va., and Walkley E. Johnson, Asst. U. S. Atty., of Belle Haven, Va., for defendants.

HUTCHESON, District Judge.

This is a proceeding brought by the Barn Ballroom Company, a corporation, against Rear Admiral W. L. Ainsworth, United States Navy, Commandant of the Fifth Naval District, and Brigadier General Rollin L. Tilton, United States Army, Commanding Officer, Fortress Monroe, Virginia, seeking an injunction to enjoin the defendants from enforcing an order issued by their authority, declaring the place of business of the plaintiff "out of bounds" or "off limits" to enlisted military personnel.

The defendants have filed a motion to dismiss upon the ground that the Court lacked jurisdiction of the subject matter of the action for the reason that the defendants are officers of the United States of America and this suit is, in substance, an action against the United States, which has not consented to be sued nor waived its immunity from suit. The plaintiff subsequently has filed an amended complaint. The motion will be considered as directed at both the original complaint and the amended complaint.

It is my understanding that neither party desires to introduce further evidence at this time. Am I correct in that?

Mr. Johnson: The Government does not desire to.

Mr. Jacobs: That is correct, sir.

The Court: The pleadings as filed have been examined rather carefully, especially with respect to the allegation in regard to jurisdiction. I have come to the conclusion that the jurisdiction is sufficiently alleged under the liberality of the Rules of Civil Procedure, upon two theories: There is an allegation of the diversity of citizenship, and the requisite value of the subject matter. I think that the complaint and the amended complaint also are sufficient to raise the issue of a federal question involved in that the subject matter revolves around the action taken under the laws of the United States. I am, therefore, of opinion that the jurisdiction of this court has been sufficiently alleged in the pleadings.

The case presents two questions of law, as I view it.

The first is, Does the Court have jurisdiction of the subject matter? That is, in view of the motion which has been filed by the defendants, whether it is a suit against the United States, in which event the motion should be sustained. If the Court were of opinion that it is not a suit against the United States, then the motion should not be sustained.

The second question of law involved, as I view it, is, Does the Court have authority to review the action of the military in its dealings with the property or rights of civilians doing business with the public, including members of the armed forces, such civilians not being in the land or naval forces or in the militia in actual service in time of war or public danger?

Considering these questions in order, I do not deem it necessary to discuss the various legislative enactments and Executive Orders under which the Army and Navy operated. These are well known, and a discussion of the source of authority would serve no useful purpose.

In support of the motion to dismiss, which involves the question now being discussed, the defendants introduced in evidence copies of War Department Circular No. 367, dated September 9, 1944, War Department Circular No. 134, dated May 4, 1945, and Court Martial Or-

ders No. 1 of 1942, of the Navy Department, specifically the provisions appearing on page 135, as the pertinent regulations under which the defendants acted in declaring the place out of bounds. These several regulations to which I have referred are relied upon as the authority under which the Army and Navy have set up what is known as the Joint Army-Navy Disciplinary Control Board. That Board, among other duties, has that of recommending in its discretion that orders be issued declaring certain areas off limits to service personnel. An examination of the regulations indicate their underlying purpose to be that of promoting the welfare of the enlisted personnel and maintaining discipline and preventing misconduct on the part of such personnel. Under the regulations, it is contemplated that such recommendation, to which I have referred, shall be made after investigation and either with or without previous warning to the proprietor of the affected establishment. The Board may also recommend the removal of such restrictions, in its discretion, and upon a showing that the conditions complained of have been eliminated.

As respects the Army (still discussing the regulations), the commanding general of the service command may enter such order after consultation with senior officers of units and installations not under his control, and in an emergency the local commander may enter such order and report to the service commander his reasons.

The naval regulation to which I have referred expressly states that such action is an administrative action within the discretion of the commanding officer.

The testimony which has been introduced is to the effect that the order now being considered was issued pursuant to a recommendation of the local Joint Army and Navy Disciplinary Control Board, and that the local commander at Fort Monroe reported the action to the commander of the service command.

In support of the motion to dismiss, the defendants rely principally upon the case of Ferris v. Wilbur, 27 F.2d 262, which is a decision of the Fourth Circuit Court of Appeals and involves a case tried in this court. An examination of that case discloses that it is not analogous to the instant case. There the action complained of was taken pursuant to the express direction of Congress, which had specifically directed the establishment of a naval mine depot for the storage of explosives. In accordance with the act of Congress, in that case the President by proclamation designated a specific area as the site for the depot, near Yorktown, Virginia. The appropriate officers of the Navy proceeded to carry out the orders of their superiors in the erection of such storage place. It thus appears that express orders to do the identical act complained of originated with the Government, acting through the legislative branch. Carrying out the act pursuant to that expressed governmental policy involved no discretion on the part of the Secretary of the Navy or of his subordinates.

In the case at bar there was no congressional direction that the plaintiff's establishment be placed out of bounds. So far as the record discloses, no such direction emanated from either the Secretary of War or the Secretary of the Navy, nor has any such direction been issued by any officer of either establishment superior in rank to the defendants. The order complained of had its genesis in a recommendation of the local Joint Disciplinary Control Board, and pursuant to that recommendation the order was issued. The commanding officer of Fort Monroe reported to his superior, not that such order had been received and carried out, but that such order had been issued. The Commandant of the Fifth Naval District reported to no one, and it appears that the defendants neither obtained authority in advance nor that such authority was required. Therefore, the action complained of appears to be the exercise of a discretion vested in the local commanders and is in no sense an act performed in carrying out an expressed governmental policy.

█ I conclude, therefore, that this is not a suit against the United States, but is a suit seeking to review the action of local military commanders performed in the

exercise of a discretion vested in them, and that the defendants are the proper parties.

■ Now, turning to the second question. No case has come to my attention in which the factual situation was the same as in this case. ·The underlying principles involved are not new. The situation, applied to the facts of this case, may be summed up in a quotation from the case of Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375. In that case the court, 287 U.S. at page 401, 53 S.Ct.· at page 196, 77 L.Ed. 375, said: "What are the allowable limits of military discretion, land whether or not they have been overstepped in a particular case, are judicial questions."

The courts have repeatedly been called upon to consider cases in which the action of the military involved the rights of the civilian. Such situations have been the cause of controversy and litigation since long before this nation was formed. The most recent discussion of the principle involved by the Supreme Court is found in its opinion in the case of Duncan v. Kahanomoku and White v. Steer, 66 S.Ct. 606. That case was cited to me at the argument of this case. In addition to that case, I have examined a number of other cases, which I shall not take the time to cite at this phrase of the case.* I do call attention particularly, however, to Sterling v. Constantin, and to the case of Ex Parte Milligan, 71 U.S. 2, 18 L.Ed. 281, both of which contain comprehensive and enlightening discussions of the limits beyond which the military may not go in dealing with the persons and rights of civilians. A detailed discussion and historical review at this time of the basic principles involved, ·I do not consider necessary. Suffice it to say that the principles enunciated in the cases which I have examined, when applied to the facts of this case, lead me to the conclusion that there is a responsibility upon the Court to review the action of the defendants.

■ The right of a civilian engaged in a legitimate occupation is a property right of which he may not be deprived except by due process of law under the Fifth Amendment of the Constitution. ·

■ An ex parte hearing by the Joint Army-Navy Disciplinary Control Board does not constitute due process, and there appears no provision in the military regulations examined for hearing a civilian before that board, nor have I had brought to my attention any method of appeal or of a hearing elsewhere within the military establishment, assuming that such hearing would constitute due process under the Fifth Amendment, upon which point I express no opinion.

I do not deem it necessary or proper at this time to discuss the weight of the presumption of a proper exercise of discretion which such act may be entitled to at a hearing upon the merits, but for the Court to decline to review such action would place a civilian operator of a legitimate business in a position of being unable to obtain a hearing before any tribunal for the purpose of presenting his side of the case.

I am able to perceive of no sound objection which could be offered against such hearing. Our system of law requires that the citizen, the individual, be afforded a hearing before his rights are determined.

A review of the acts of the defendants can do no prejudice to their rights. If upon a hearing on the merits facts are shown justifying the issuance of the order, it will remain in effect. If, upon the other hand, the order was improvidently issued, it should be annulled by some proper authority, military or civil. As previously pointed out, and I now repeat, there appears no provision anywhere in the military regulations for a proper hearing of the civilian within that establishment. Consequently, the only right of redress would be through the civil courts, since it is in those courts only that his right to a hearing is recognized. ·

■ The Court recognizes the power of

---

* Von Knorr v. Miles, D.C., 60 F.Supp. 962; see also opinion on appeal, Von Knorr v. Griswold, 1 Cir., 156 F.2d.287; Alexander v. De Witt et al., 9 Cir., 141 F.2d 573; Schueller v. Drum, Lt. General, D.C., 51 F.Supp. 383; Scherzberg v. Maderia, Lt. Colonel, D.C., 57 F.Supp. 42; Ochikubo v. Bonesteel et al., D.C., 57 F.Supp. 513. See also, Id., D.C., 60 F. Supp. 916.

the military to deal with its personnel in military affairs without interference from the civil courts, and nothing here is to be construed as an assertion of the power of the Court to dictate military policy. It is only when acts of the military invade the rights of the civilian that the Court has the power to intervene, and such intervention may not be precluded merely because the act complained of is performed as the result of an order given the military personnel. The proper test would appear to be the effect of the act as it relates to the property or rights of the civilian only.

As previously indicated, it would appear that such an order properly may be issued for the purpose of either promoting the welfare of the enlisted personnel or for the purpose of maintaining the discipline of such personnel, which would include preventing misconduct, or the purpose of the order might be to effect both objects.

The defendants have as yet introduced no evidence bearing upon the necessity or the propriety of the order of which complaint is made. Therefore, upon the application for a preliminary injunction, the Court has before it only the evidence of the plaintiff.

The pertinent facts developed by the evidence of the plaintiff show that it is the operator of a dance hall or place of entertainment in Newport News, Virginia, at which food and soft drinks are dispensed. No intoxicants are served and the plaintiff does not hold a license for dispensing such beverages. The business has been in operation since 1942 and represents an investment of approximately $20,-000. The operator of the business, Bert Kay, president, has no police court record in Newport News, and the conduct of the business is legitimate in every respect. A large portion of the patronage consists of members of the enlisted personnel of the armed forces, and, while occasionally disorders occur, such occasions are rare and the management cooperates with the police in suppressing such incidents. Since the business has been in operation, there has not heretofore been any difficulty or misunderstanding with the armed forces and

the premises have not before been placed out of bounds, although many other establishments in the Newport News area have been placed out of bounds. From the testimony offered by the plaintiff, it appears that shortly before the receipt of the notice hereinafter mentioned, an officer from the provost marshal at Fort Monroe, upon the occasion of a visit to the premises, directed an inquiry to Mr. Kay as to whether one of the enlisted men then present was drinking whiskey, to which Mr. Kay responded that he did not know, but stated that he sold the man a Coca-Cola. This is the only time, from the present state of the record, at which any suggestion or criticism concerning the conduct of the business has been brought to the attention of the management. At that time or shortly thereafter, from some statement made at the time, the management received the impression that the establishment might be placed off limits. On or about February 11, 1946, a written communication bearing that date, purporting to be from the Director of Discipline, Headquarters Fifth Naval District, was received by the management, in which communication it was stated that effective immediately the establishment was placed out of bounds to service personnel until further notice, and that the restriction was made due to unsanitary and immoral conditions existing there. Thereafter, a guard consisting of two members of the Shore Patrol was stationed at the entrance to the place of business. The guard warned all men in uniform approaching the place of business not to enter, stating that it was out of bounds, as a result of which not only the men in uniform but their civilian companions, and perhaps others, refrained from entering the place of business.

After receiving the notice to which I have referred, the plaintiff proceeded to make inquiry of various officers believed to be in charge of this matter. He denies that any unsanitary or immoral conditions existed. He has directed inquiry to numerous officers of the military, requesting that he be advised of the facts upon which the order was based, and that he be afforded an opportunity to be heard by either the

board or some representative, in order that he might be given an opportunity to present what he contends to be the real state of facts concerning the conditions existing. As yet he has been able to obtain no information concerning the reason for the order, except as stated in the order. He has been unable to obtain a hearing before any military authority, nor has he been afforded an opportunity of presenting his contentions. After making these efforts to get a hearing, the complaint was filed and notice of this application was given the defendants.

As I have mentioned previously, the case is now before the Court on an application for a preliminary injunction. The defendants have not introduced any evidence upon the question of the propriety of the order. Therefore, the case is to be considered solely upon the evidence of the plaintiff at this stage.

█ In view of the circumstances as disclosed by the record, it is my opinion that an order granting the temporary injunction should be issued, and such order may be prepared and presented.

### Findings of Fact

1. Under an agreement dated August 29, 1944, between the Acting Secretary of War and the Acting Secretary of the Navy, there was established in the Naval District-Service Command embracing the Newport News, Virginia, area, a Joint Army-Navy Disciplinary Control Board composed of the officers specified in said agreement. Among other duties and functions of the Board was the following: "To recommend designated places or areas 'Off Limits', or 'Out of Bounds' (to service personnel), such recommendations to be made at the discretion of the Board, with or without previous warning to the proprietor; and to recommend the removal of 'Off Limits' or 'Out of Bounds' restriction when conditions are considered satisfactory."

The agreement further provides that: "Appropriate commanders will take such action as necessary to carry out the provisions of this agreement * * *." See War Department Circular 367, Sept. 9, 1944, Sec. VI.

Circular 134, May 4, 1945, Sec. VII, provides that the commanding generals of service commands are charged with responsibility of controlling the conduct of military personnel within the geographic limits of their service commands with exceptions not pertinent here.

Under the regulation the commanding general of a service command, after consultation with senior officers of units and installations not under his control, may prescribe "off limits" for military personnel in civilian communities. VII–2b reads as follows: "In an emergency, a local commander may temporarily declare places 'off limits' to all persons subject to military law, reporting immediately to the commanding general of the service command concerned all reasons for such action".

The declaration of places "off limits" will apply to all members of the Army, the Navy, the Marine Corps and the Coast Guard if joint Army and Navy approval has been effected as provided in Section VI, War Department Circular 367, 1944, before mentioned. Court Martial Orders No. 1 of 1942, United States Navy Department, is the pertinent regulation under which the commanding officer of the Navy derives his authority in such matters and it is apparent that such action on his part is an administrative action within his discretion.

2. Rear Admiral W. L. Ainsworth is commandant of the Fifth Naval District, and Brigadier General Rollin L. Tilton is commanding officer of Fort Monroe, Virginia. These two officers are in command of the Navy and Army Forces under their respective commands stationed within the city of Newport News.

3. Brigadier General Tilton is the local representative of the Commanding General of the Third Service Command and prior to his designation as such on February 20, 1946, another officer was such representative, and the order complained of was issued pursuant to the approval of such other officer in behalf of the Army and of Rear Admiral Ainsworth in behalf of the Navy.

4. The regulations contain no specific instructions setting forth conditions, the existence of which necessitate or justify placing an establishment "off limits".

5. Since 1942 the Barn Ballroom Company, Incorporated, has been the operator of a public dance hall in Newport News, Virginia, at which food is served but no alcoholic drinks are dispensed. The establishment is patronized by enlisted personnel of the military forces, as well as by civilians, the former constituting the greater proportion of its patrons. Bert Kay, the president and manager, has no police court record and prior to the occurrences hereinafter related, the establishment had no difficulty with any law enforcement officials except upon one occasion involving some question concerning regulations of the Office of Price Administration, which was adjusted. The management co-operated with all such officials in endeavoring to maintain order on the premises.

There is no place of a similar kind in Newport News open to the general public which can be frequented by enlisted men. Its capacity is approximately 286 persons and an estimate of the proportion of men frequenting the establishment placed those of the enlisted class as high as 98%. During the period from July 1, 1945, to February 15, 1946, the total number of arrests made by the Shore Patrol in Newport News was approximately 700, of which 33 (approximately 5%) occurred at the place of business of the complainant. The complainant denies the existence of unsanitary or immoral conditions and no evidence concerning such conditions has been introduced by the defendants. The business of complainant represents an investment of about $20,000.

During January 1946, Captain Burns, the Provost Marshal of the area, during a visit indicated a belief that a sailor, who had purchased a popular soft drink, was drinking whiskey and some argument ensued between him and Mr. Kay, at which time the provost Marshal threatened to cause the place to be declared "off limits" to enlisted personnel (R. 22–43). Following the occurrence just related, Mr. Kay on February 1, 1946, appeared before the local Joint Army–Navy Disciplinary Control Board at Norfolk and related the facts recited and supposed the incident was closed. Upon this occasion no reference was made to any unsanitary or immoral conditions existing at the establishment. On or about February 11, 1946, there was served upon the complainant a written notice bearing the last mentioned date, purporting to be from the Director of Discipline, Headquarters Fifth Naval District, to the effect that beginning immediately the establishment was placed out of bounds to service personnel until further notice, reasons assigned for such restriction being unsanitary and immoral conditions existing there. Thereafter a military guard was stationed at the entrance to the place of business, who warned all men in uniform who approached not to enter as it was "out of bounds". As a result not only the men in uniform but their civilian companions and perhaps others refrained from entering.

After receiving the notice referred to the president and manager of the complainant corporation proceeded to make inquiry of various officers believed to be in authority concerning the situation. He endeavored to appear before the Joint Army–Navy Disciplinary Control Board but was informed such appearance would have to be by joint invitation (R. 47). He testified that he has made unavailing efforts to ascertain the nature or basis of the charge from both the Army and Naval authorities. He summarized his efforts as follows: "I called up Captain Cabanillas[1]. He told me to call up Captain Flanagan[2]. I called Captain Flanagan. He told me to see Major Goldberg[3]. Major Goldberg says he don't know. 'See your lawyer'. I went to the Fifth Service Command in Baltimore. He said: 'See Captain Flanagan'. Captain Flanagan tells me to see Major Goldberg again, and I quit."

The complainant did make a further effort by having its attorneys undertake to make an appointment with General R. L. Tilton, one of the defendants, the result being that it was once more referred to Major Goldberg.

---

[1] Director of Discipline, Headquarters Fifth Naval District.

[2] Provost Marshal, Fort Monroe, acting in absence of Captain Burns, who was on duty at the time of the discussion with Mr. Kay.

[3] Judge Advocate General's Department, stationed at Fort Monroe.

This action was then instituted.

6. The regulations make no provision for a hearing of the complaint by any military authority.

### Conclusions of Law

1. A Federal question is involved and this Court has jurisdiction of the subject matter.

2. The defendants are the proper parties to this proceeding and are subject to the jurisdiction of the Court in this action. The issuance and enforcement of the order declaring the premises "off limits" were not acts performed by the defendant pursuant to an expressed governmental policy as in the case of Ferris v. Wilbur, 4 Cir., 27 F.2d 262. The defendants were not acting in obedience to orders from any officer superior to themselves. The defendants were acting in the exercise of a discretion vested in them as local commanders in charge of the military personnel in the area in which is located the place of business of the complainant. Therefore, this is not a suit against the United States. Also see State of Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927.

3. The right of a civilian to engage in business is a property right of which he may not be deprived except by due process of law. Fifth Amendment to the Constitution. The complainant has not been afforded due process of law.

4. When acts of the military invade rights of a civilian (such civilian not being in the land or naval forces or in the militia in actual service in time of war or public danger) the civil court has the power to intervene for the purpose of affording such civilian due process of law and of reviewing the exercise of discretion on the part of the military authorities as it affects the property or rights of such civilian. Such intervention and review may not be denied merely because the act complained of is performed as the result of an order directed solely to military personnel. See Ex parte Milligan, 71 U.S. 2, 18 L.Ed. 281 (and cases there discussed) ; Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375; Duncan v. Kahanamoku and White v. Steer, 66 S.Ct. 606, 90 L.Ed. ——.

5. A temporary injunction should be entered enjoining the defendants, their agents, representatives, subordinates and all others acting by or under their authority from enforcing the order issued on or about February 11, 1946, declaring the premises occupied by the complainant at No. 2611 Washington Avenue, Newport News, Virginia, "off limits" or "out of bounds" to enlisted personnel under their command.

6. Such temporary injunction should not be limited in its terms to enjoin merely the placing of guards at the premises but should be directed at the enforcement of the order in its entirety.